# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SCHOOL BOARD OF OSCEOLA
COUNTY, FLORIDA,

        Plaintiff,

                        Case No. 6:21-cv-01979-ACC-LRH

v.

GALLAGHER BENEFIT SERVICES,
INC.,

        Defendant.

_____

## AMENDED COMPLAINT

Plaintiff, School Board of Osceola County, Florida ("School Board"), sues Defendant, Gallagher Benefit Services, Inc. ("Gallagher"), and alleges:

## INTRODUCTION

1. Plaintiff, School Board, oversees a school district in Osceola County ("School District") comprised of 53 schools educating almost 70,000 students. The School District ranks 67th out of 67 counties in the State in the amount of administrative costs per student, ensuring the most dollars as possible go towards the classroom. This penchant for managing administrative costs permeates the School Board's fiscal policy and general philosophy, which underscores the School Board's shock and disappointment to learn that Gallagher had breached its solemn commitment made in a series of services agreements and renewals over a span of almost 10 years to serve as the School Board's consultant in selecting the best employee

benefits programs *"in the best interest of the School Board and not that of plan administrators and/or of insurance carriers."*   Gallagher breached the agreements for the basest of reasons—*greed*.

2.     Gallagher boasts on its website to *"bringing greater trust to the public trust,"* particularly when serving schools in its *"primary mission of giving kids the best possible education,"* but its actions regarding the School Board proved anything but that. Although Gallagher had agreed to cap its annual fee (to an amount ranging from **$184,500.00 to $195,650.00**), a critical feature of the consulting engagement to ensure that Gallagher would be motivated by objective assessment, not economic incentive, unknown to the School Board, Gallagher had received secret insurance commissions over the years totaling millions of dollars. In doing so, Gallagher breached its agreements and, worse, the School Board's trust, leaving the unmistakable taint on Gallagher's fealty given that the School Board had engaged a consultant getting paid more from the carriers it was to scrutinize and supervise than from the School Board itself. The School Board sues Gallagher for damages, including the disgorgement of the secret commissions.

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff, School Board, is a public municipal agency created under Article IX, Section 4 of the Florida Constitution with jurisdictional bounds in Osceola County, Florida.

2

4.      Defendant, Gallagher, a foreign corporation with its principal place of business in Cook County, Illinois, also conducts authorized business in Florida.

5.      This Court has jurisdiction under 28 U.S.C. § 1332(a), as the parties are citizens of different states and the damages sought are greater than $75,000.

6.      Venue is appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district and Gallagher transacts business in this district. Venue is also appropriate in this district under Section 8 of the parties' Services Agreements.

## GENERAL ALLEGATIONS

### The School Board's Request for Proposal and Gallagher's Response to the Request for Proposal

7.      On November 17, 2011, the School Board issued a request for proposal No. SDOC-12-P-045-NM seeking responses from qualified consultants who could provide employee benefit consulting services to assist the School Board in selecting, administering, and monitoring its employee benefit insurance plan and products for Osceola County teachers, school administrators, and qualified retirees ("2011 RFP"). A copy of the 2011 RFP, including subsequent addenda, are attached hereto as **Exhibit 1**.

8.      On December 12, 2011, Gallagher submitted its response to the 2011 RFP ("Response to the 2011 RFP"). A copy of the Response is attached hereto as **Exhibit 2**.

9.      In the Response to the 2011 RFP, Gallagher made the following

3

representations to the School Board:

    a.    "We will customize an approach that is right for The School Board, allowing you to focus on the task of striking a balance between protecting your employees, retirees and serving the public in a fiscally responsible way." (Exhibit 2 at 4).

    b.    "We look forward to promoting Professor POHP's mission of protecting your health plan and encouraging the responsible use of available resources while steering clear of The Evil Mr. FLOP (Financial Loss on Plans)." (*Id.*).

    c.    "Finally, and most important, we view our firm and organization as an extension of your Human Resources/Risk Management department and will work diligently to support your mission." (*Id.*).

    d.    "We will evaluate carriers that have the right products for your employees' needs, while remaining objective in providing the best carriers, vendors, networks and risk arrangements for each unique client situation. **We will fully disclose all compensation received.**" (*Id.* at 43) (emphasis added).

    e.    "We will represent your best interests in all ongoing interactions with carriers and vendors, including negotiations and handling all ongoing service." (*Id.* at 47).

10.    The Response to the 2011 RFP also included a "Conflict of Interest" affidavit signed and sworn by Gallagher. (*Id.* at 77). In the affidavit, Gallagher represented:

    a.    "[N]o employee, officer, or agent of the firm have any conflicts of interest, real or apparent, due to ownership, other clients, contracts, or interests associated with this project." (*Id.*).

    b.    "This Submittal is made without prior understanding, agreement, or connection with any corporation, firm, or person submitting a

response for the same services, and is in all respects fair and without collusion or fraud." (*Id.*)

11.    The Response to the 2011 RFP also included Addendum # 1 to the 2011 RFP which was signed by Gallagher on December 12, 2011. (Exhibit 2 at 79). By signing the Addendum, Gallagher represented and acknowledged the following:

> **Section G. Pricing and Compensation Guidelines**
> Please note that the School Board will not allow the Awarded Consultant to accept any commissions, contingencies, supplemental compensation or income nor in-kind services on any insurance products purchased for the School Board. (*Id.*)

12.    The Response to the 2011 RFP included a Request for Proposal form that was signed by Gallagher. (*Id.* at 61). By signing the Request for Proposal form, Gallagher represented and acknowledged:

> I hereby certify that I have read and understand the requirements of this Invitation to Bid and that I, as the bidder, will comply with all requirements of this offer and any contract(s) and/or other transactions required by this award. (*Id.*)

13.    The Response to the 2011 RFP included a Revised Proposal form that was signed by Gallagher. (*Id.* at 55). By signing the Revised Proposal Form, Gallagher represented and acknowledged:

> I hereby certify that I have read and understand the requirements of this Request for Proposals No. SDOC-12-P-045-NM and, that I as the respondent, will comply with all requirements, and that I am duly authroized to execute this proposal/offer document and any contract(s) and/or other transactions required by award of this RFP. (*Id.*)

## Original Services Agreement

14.    The School Board ultimately selected Gallagher in reliance on and as induced by Gallagher's Response to the 2011 RFP. Consequently, on February 21,

2012, the School Board and Gallagher entered a two-year Services Agreement ("Original Services Agreement"). A copy of the Original Services Agreement is attached hereto as **Exhibit 3**.

15.    To ensure Gallagher performed the essential gatekeeper functions under the Original Services Agreement, the School Board secured a commitment for Gallagher to perform myriad services, including analyses, procurement assistance, implementation, development of deliverables and milestones, and project management, for which Gallagher agreed to be paid **"Total Fees Not to Exceed" $195,650.00**:

Attachment "B"

Fees and Compensation

➢  Analysis of Current Employee Benefits Program

➢  Procurement Assistance with RFP for Administrative Services Only (ASO) and Transparent Pharmacy Benefit Manager (PBM)

➢  Implementation, Transition and On-Going Administrative Support Services

➢  Development of Deliverables and Milestones for First Year

➢  Project Management and Performance Monitoring Services

Total Fees Not to Exceed            $ 195,650.00

(Exhibit 3 at 9).

16.    On or about December 13, 2012, Gallagher submitted a Client Coverage Acknowledgement and Compensation Disclosure Statement for the School District of Osceola County ("December 2012 Disclosure"). A copy of the December 2012 Disclosure is attached hereto as **Exhibit 4**. Although the December 2012 Disclosure

discloses that Gallagher's fees under the Original Services Agreement would come from certain carriers based on certain percentages, (*Id.* at 1), it failed to disclose that the total fees it received or would receive from those carriers exceed $195,650.00 per year.

17.     On December 10, 2013, Gallagher submitted a Client Coverage Acknowledgement and Compensation Disclosure Statement for the School District of Osceola County ("December 2013 Disclosure"). A copy of the December 2013 Disclosure is attached hereto as **Exhibit 5**. Although the December 2013 Disclosure discloses that Gallagher's fees under the Original Services Agreement would come from certain carriers based on certain percentages, (*Id.* at 1), it failed to disclose that the total fees it received or would receive from those carriers exceeded $195,650.00 per year.

18.     On January 21, 2014, in reliance on and as induced by, *inter alia*, the December 2012 Disclosure and the December 2013 Disclosure, the School Board entered a one-year Services Agreement Renewal ("Renewal 1 of Original Services Agreement"). A copy of Renewal 1 of Original Services Agreement is attached hereto as **Exhibit 6**. Renewal 1 of Original Services Agreement incorporated all the terms and conditions of the Original Services Agreement. (*Id.* at 1). As such, Gallagher agreed that its fees would be paid as commissions earned from insurance products and that those fees would not exceed $195,650.00 per year:

| YEAR | FND | CNTR | PROJECT | FUNC | OBJT | PRG | S | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| Fee is paid by Commissions earned from Insurance Products | | | | | | | | |
| | | | | | | | | |

19.     On November 18, 2014, in reliance on and as induced by, *inter alia*, the December 2012 Disclosure and the December 2013 Disclosure, the School Board entered a one-year Services Agreement Renewal ("Renewal 2 of Original Services Agreement"). A copy of Renewal 2 of Original Services Agreement is attached hereto as **Exhibit 7**. Renewal 2 of Original Services Agreement incorporated all the terms and conditions of the Original Services Agreement. (*Id.* at 1). As such, Gallagher agreed that its fees would be paid as commissions earned from insurance products and that those fees would not exceed $195,650.00 per year:

| YEAR | FND | CNTR | PROJECT | FUNC | OBJT | PRG | S | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| Fee is paid by Commissions earned from Insurance Products | | | | | | | | |

20.     On November 24, 2015, Gallagher submitted a Client Coverage Acknowledgement and Compensation Disclosure Statement for the School District of Osceola County ("November 2015 Disclosure"). A copy of the November 2015 Disclosure is attached hereto as **Exhibit 8**. Although the November 2015 Disclosure discloses that Gallagher's fees under the Service Agreement would come from certain carriers based on certain percentages, (*Id.* at 1), it failed to disclose that the total fees it received or would receive from those carriers exceeded $195,650.00 per year.

8

21.     On February 16, 2016, in reliance on and as induced by, *inter alia*, the November 2015 Disclosure, the School Board entered a Third Amendment to Agreement ("Renewal 3 of the Original Services Agreement"). A copy of Renewal 3 of the Original Services Agreement is attached as **Exhibit 9**. Renewal 3 of the Original Services Agreement incorporated all the terms and conditions of the Original Services Agreement. (*Id.* at 1). As such, Gallagher agreed that its fees would be paid as commissions earned from insurance products and that those fees would not exceed $195,650.00 per year:

| YEAR | FND | CNTR | PROJECT | FUNC | OBJT | PRG | S | AMOUNT |
|------|-----|------|---------|------|------|-----|---|--------|
| 2015/16-2016/17 | | | | | | | | Fee paid by Commissions earned from Insurance Products |

22.     On October 17, 2016, Gallagher submitted a Client Coverage Acknowledgement and Compensation Disclosure Statement for the School District of Osceola County ("October 2016 Disclosure"). A copy of the October 2016 Disclosure is attached as **Exhibit 10**. Although the October 2016 Disclosure discloses that Gallagher's fees under the Service Agreement would come from certain carriers based on certain percentages, (*Id.* at 1), it failed to disclose that the total fees it received or would receive from those carriers exceeded $195,650.00 per year.

### The School Board's Second Request for Proposal and Gallagher's Response to the Second Request for Proposal

23.     On October 19, 2016, the School Board issued another request for proposal No. SDOC-17-P-052-LK seeking responses from qualified consultants who

could provide employee benefit consulting services to assist the School Board in selecting, administering, and monitoring its employee benefit insurance plan and products for Osceola County teachers, school administrators, and qualified retirees ("2016 RFP"). A copy of the 2016 RFP, including subsequent addenda, are attached hereto as **Exhibit 11**.

24.     The 2016 RFP had an Addendum #1 which includes a list of questions that the School Board received from consultants that were looking to submit a response to the 2016 RFP. The School Board answered all the questions specifically clarifying its intent that the selected consultant's annual fee would be paid by capped commissions:

| 12. | Are the current services provided via a fixed fee arrangement, on a time-and-expense basis, or on a commission schedule? |
|---|---|
| Answer: | Combination of fixed fee paid by capped commissions. (Exhibit 11 at 64). |
| 13. | If services are provided via a fixed fee arrangement, what is the most recent fee arrangement? |
| Answer: | Fixed fee paid by capped commissions. (*Id.*). |
| 15. | If services are provided on a commission schedule, what is the schedule? How much was paid to the consultant in 2015? |
| Answer: | Fixed fee paid annually with capped commissions $195,650.00. (*Id.*). |
| 41. | What are the annual consulting fees paid to Gallagher? |
| Answer: | Fixed fee paid by capped commissions. (*Id.* at 68). |

25.     On November 14, 2016, Gallagher submitted its response to the 2016 RFP ("Response to 2016 RFP"). A copy of the Response to 2016 RFP is attached hereto as **Exhibit 12**.

26.     In the Response to 2016 RFP, Gallagher made the following representations to the School Board:

a.     "At Gallagher, we believe that we have clients and we have partners. The best engagements we have, for both organizations, are based on true partnerships. Successful partnerships are based on one simple rule; open, honest communication. These kinds of discussions lead to hearing all sides of an idea, and bringing forward the best possible solutions and creativity to complex problems. We feel we have this type of partnership with the District and are extremely eager and excited to continue our work helping you achieve your goals, mission and vision." (Exhibit 12 at 49).

b.     "Our relationship with the District goes way beyond a traditional client vendor contract. We feel the Risk and Financial Management teams also view our relationship as a **true partnership**." (*Id.* at 14) (emphasis added).

c.     "Our role as your consultant is to be the impartial, independent advisor on EVERY aspect of your program. Our value is in our ability to provide a balanced analysis of every vendor seeking to provide services to your organization. This includes your healthcare providers for medical, dental and vision, all services related to the Center for Employee Health and on-site medical services, and administrative services including COBRA, FSA and worksite enrollment services." (*Id.* at 3, 43).

d.     "Gallagher is and always will have the best interest of the District in mind. We will not make recommendations that are not in the best interest of our clients . . . . Our consulting contract means we evaluate EVERY vendor and will make changes wherever there is a need." (*Id.* at 28).

11

e.  "[W]e do not hesitate to bring the leverage of our significant block of business with all carriers to make sure we are securing the absolute best pricing and terms for our clients." (*Id.* at 30).

f.  "Gallagher continuously interacts with carriers to ensure that they are adhering to negotiated agreements. We will lead all scheduled vendor meetings and make vendor performance an agenda topic in our meetings. The Risk Management team consistently involves our team to help resolve contract and service issues with all the vendors." (*Id.* at 46).

g.  "Gallagher feels we have a true partnership and as needs evolve, our services evolve." (*Id.* at 51).

h.  "We are maintaining our current compensation structure with no increase to the District. In addition, we are willing to extend this arrangement for two additional 1-year terms, should the District wish to elect that option." (*Id.* at 53).

27.  In the Response to 2016 RFP, Gallagher also identified its Original Services Agreement as a current or recently completed project which best illustrates the experience it has in providing employee benefits consulting services. (*Id.* at 14). Gallagher identified that the "Size of engagement (project dollar value)" was "$195,000 per year." (*Id.*).

28.  The Response to the 2016 RFP included a "Conflict of Interest" affidavit signed and sworn by Gallagher. (*Id.* at 62). In the affidavit, Gallagher represented:

a.  "[N]o employee, officer, or agent of the firm have any conflicts of interest, real or apparent, due to ownership, other clients, contracts, or interests associated with this project." (*Id.*).

b.  "This Submittal is made without prior understanding, agreement, or connection with any corporation, firm, or person submitting a

response for the same services, and is in all respects fair and without collusion or fraud." (*Id.*).

29.     The Response to 2016 RFP included a Request for Proposal form that was signed by Gallagher. (*Id.* at 56). By signing the Request for Proposal form, Gallagher represented and acknowledged:

> "I hereby certify that I have read and understand the requirements of this Request for Proposal and that I, as the bidder, will comply with all requirements of this offer and any Contract(s) and/or other transactions required by this award." (*Id.*).

### Second Services Agreement

30.     Believing that Gallagher had provide full and honest disclosures over the life of the preceding Original Services Agreement and its three renewals, and in reliance on and as induced by Gallagher's Response to the 2016 RFP, the School Board and Gallagher entered a second Services Agreement on February 7, 2017, a true and correct copy of which is attached hereto as **Exhibit 13** ("Second Services Agreement").

31.     The Second Agreement allowed a fixed fee of **$184,500.00 per year** to be "paid for out of insurance commissions":

> 5.     **Compensation and Payment.** Based on the completion of services described in paragraph 1 above, the Contractor shall receive payment as listed below:
>
> A fixed fee of $184,500.00 per year (paid for out of insurance commissions)

(Exhibit 13 at 4).

32.     On December 20, 2017, Gallagher submitted a Client Coverage Acknowledgement and Compensation Disclosure Statement for the School District of

Osceola County ("December 2017 Disclosure"). A copy of the December 2017 Disclosure is attached hereto as **Exhibit 14**. Although the December 2017 Disclosure discloses that Gallagher's fees under the Service Agreement would come from certain carriers based on certain percentages, (*Id.* at 1), it failed to disclose that the total fees it received or would receive from those carriers exceeded $184,500.00 per year.

33.     On November 15, 2018, Gallagher submitted a Client Coverage Acknowledgement and Compensation Disclosure Statement for the School District of Osceola County ("November 2018 Disclosure"). A copy of the November 2018 Disclosure is attached hereto as **Exhibit 15**. Although the November 2018 Disclosure discloses that Gallagher's fees under the Service Agreement would come from certain carriers based on certain percentages, (*Id.* at 1), it failed to disclose that the total fees it received or would receive from those carriers exceeded $184,500.00 per year.

34.     On February 19, 2019, in reliance on and as induced by, *inter alia*, the December 2017 Disclosure and the November 2018 Disclosure, the School Board entered a First Amendment to Agreement extending the term of the Second Services Agreement until May 31, 2019 ("Renewal of Second Services Agreement"). A copy of the Renewal of Second Services Agreement is attached hereto as **Exhibit 16**. The Renewal of Second Services Agreement incorporated all of the terms and conditions of the Second Services Agreement. As such, Gallagher agreed that its fee would be paid as commissions earned from insurance products and that it would be a fixed fee of $184,500.00 per year.

## The Secret Commissions

35.     In accordance with the Original Services Agreement and Second Services Agreements, as renewed, Gallagher assisted the School Board in procuring presumably competitive proposals from qualified insurance carriers and third-party administrators for services related to managing the School Board's self-funded health program for active employees and qualified retirees and their dependents.

36.     Gallagher collected secret insurance commissions of over **$2 Million** from the very carriers it recommended that the School Board retain in amounts which significantly exceeded the total fee or fixed fee to be earned under the Original Services Agreement and the Second Services Agreement.

37.     Rather than insulate the School Board from various insurance carriers, Gallagher collected secret commissions which exceeded the annual total fee or fixed fee allowed by the Original Services Agreement and Second Services Agreement, as renewed, with the School Board.

38.     The School Board has complied with all conditions precedent to the filing of this action, or such conditions have been waived or otherwise excused.

## COUNT I
## BREACH OF CONTRACT – ORIGINAL SERVICES AGREEMENT

39.     The School Board realleges and incorporates herein by reference the allegations in Paragraphs 1 through 38 above.

40.     This is a claim for breach of the Original Services Agreement, as renewed.

41.    The School Board and Gallagher entered the Original Services Agreement and its three renewals between 2012 and 2016.

42.    Gallagher materially breached the Original Services Agreement and three renewals by failing to perform numerous obligations, including, without limitation:

> a.    performing activities, discussing, advising, and recommending solutions that will be in the best interest of the School Board and not that of plan administrators and/or of insurance carriers (Exhibit 3 at 7, § A);
>
> b.    remaining impartial during all business transactions (including RFPs) (*Id.,* § D(7));
>
> c.    limiting its pay for services rendered to the total fee amounts for the Original Services Agreement and the three renewals which could not exceed **$195,650.00, per year**. (*Id.* at 9).

43.    As a direct and proximate result, the School Board suffered direct and consequential damages, including, without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board.

WHEREFORE, the School Board demands judgment against Gallagher for compensatory damages, and costs.

16

## COUNT II
## BREACH OF CONTRACT – SECOND SERVICES AGREEMENT

44.　　The School Board realleges and incorporates herein by reference the allegations in Paragraphs 1 through 38 above.

45.　　This is a claim for Breach of the Second Services Agreement, as renewed.

46.　　The School Board and Gallagher entered the Second Services Agreement on February 7, 2017, which ended on May 31, 2019.

47.　　Gallagher materially breached the Second Agreement by failing to perform numerous obligations, including, without limitation:

　　　　a.　　perform activities, discuss, advise, and recommend solutions that will be in the best interest of the School Board and not that of plan administrators and/or of insurance carriers (Exhibit 13 at 1, § 2.01);

　　　　b.　　remain impartial during all business transactions (including RFPs) (*Id.*, § 2.04(H); *Id.* at 12, § J); and

　　　　c.　　limiting its pay for services rendered to the fixed fee amounts. For the Second Services Agreement, the fixed fee could not exceed **$184,500.00, per year**. (*Id.*, § 5).

48.　　 As a direct and proximate result, the School Board suffered direct and consequential damages, including, without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board.

49.     As a direct and proximate result of Gallagher's breaches, the School Board has suffered direct and consequential damages.

WHEREFORE, the School Board demands judgment against Gallagher for compensatory damages, and costs.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**

50.     The School Board realleges and incorporates herein by reference the allegations in Paragraphs 1 through 38 above.

51.     This is a claim for breach of fiduciary duty.

52.     The School Board reposed the utmost trust in Gallagher to protects its interests while serving as the School Board's consultant in selecting the best employee benefits programs in the best interest of the School Board and not that of plan administrators and/or of insurance carriers.

53.     The School Board depended on Gallagher, and Gallagher undertook its role as a consultant for the School Board to advise, counsel, and protect the School Board.

54.     Prior to and during the term of the Original Services Agreement and Second Services Agreement, as renewed, Gallagher engaged in tortious conduct by having made several false statements of material facts and having concealed or failed to disclose material facts that were material to the parties' contractual and business relationship. Those false statements and concealment of material facts are alleged in paragraphs 9-13, 16-17, 20, 22, 24, and 26-29 above.

55.     The Original Services Agreement and the Second Services Agreement also confirmed that Gallagher would be paid a total fee or fixed fee of either $195,600.00 or $184,500.00 per year, without any further remuneration. In fact, any payment from a carrier or other third party, other than to satisfy and discharge the total fee or fixed fee due to Gallagher, would result in a direct conflict of Gallagher's fealty to the School Board and irremediably impair its objectivity.

56.     The School Board relied upon that trust in performing, entering and renewing the Original Services Agreement and entering and renewing the Second Services Agreement, totally unaware that Gallagher had been paid secret commissions from the very carriers Gallagher had agreed to scrutinize and supervise.

57.     Rather than protect the School Board, Gallagher breached its fiduciary duty and allowed the School Board and the School District, including the teachers, schools, and children it serves and represents to be abused, while earning millions of dollars.

58.     Gallagher also breached its fiduciary duty by intentionally mispresenting and concealing the true nature of its compensation and conflicts of interest, and Gallagher knew or should have known of the impropriety of the secret commissions.

59.     As a direct and proximate result, the School Board suffered direct and consequential damages, including, without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board. Damages also include the secret commissions paid to Gallagher which must be disgorged to the School Board. The School Board requests that all damages due to be

recovered be contributed to a trust to be administered to benefit the teachers serving the School Board and its 53 schools shepherding the growth and development of almost 70,000 students ("Trust").

WHEREFORE, the School Board demands judgment against Gallagher for compensatory damages, punitive damages, and costs.

**COUNT IV**
**FRAUD IN THE INDUCEMENT**

60.     The School Board realleges and incorporates herein by reference the allegations in Paragraphs 1 through 38 above.

61.     This is a claim for fraud in the inducement.

62.     On December 12, 2011, Gallagher made false statements of material fact in its Response to the 2011 RFP. These false statements are alleged in paragraphs 9-13 above.

a.     Gallagher knew or should have known that these representations were false.

b.     Gallagher intended that the School Board would rely on these false representations and that these false statements would induce the School Board to enter the Original Services Agreement.

c.     Gallagher relied on these false statements and entered the Original Services Agreement.

63.     Similarly, on October 19, 2016, Gallagher made false statements of material fact in its Response to 2016 RFP. These false statements are alleged in paragraphs 24-29 above.

    a.     Gallagher knew or should have known that these representations were false.

    b.     Gallagher intended that the School Board would rely on these false representations and that these false statements would induce the School Board to enter the Second Services Agreement.

    c.     Gallagher relied on these false statements and entered the Second Services Agreement.

64.     The School Board entered the Original Services Agreement and the Second Services Agreement, totally unaware that Gallagher would be or had been paid millions of dollars in secret commissions from the very carriers Gallagher had agreed to scrutinize and supervise.

65.     Gallagher mispresented the true nature of its compensation, and Gallagher knew or should have known of the impropriety of the secret commissions.

66.     As a direct and proximate result, the School Board suffered direct and consequential damages, including, without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board. Damages also include the secret commissions paid to Gallagher which must be disgorged to the School Board. The School Board requests that all damages due to be recovered be contributed to the Trust.

WHEREFORE, the School Board demands judgment against Gallagher for compensatory damages, punitive damages, and costs.

### COUNT V
### FRAUDULENT CONCEALMENT

67.    The School Board realleges and incorporates herein by reference the allegations in Paragraphs 1 through 38 above.

68.    This is a claim for fraudulent concealment.

69.    On December 13, 2012, and December 10, 2013, Gallagher concealed or failed to disclose a material fact in its December 2012 and December 2013 Disclosure. Specifically, as alleged in paragraphs 16 and 17 above, Gallagher concealed or failed to disclose that the total fees it received or would receive from carriers exceeded $195,650.00 per year.

     a.    Gallagher knew or should have known that this material fact should be disclosed.

     b.    Gallagher knew its concealment of or failure to disclose the material fact would induce the School Board to enter the Renewal 1 and 2 of Original Services Agreement.

     c.    Gallagher had a duty to disclose this material fact.

     d.    The School Board detrimentally relied on the concealed information.

70.    On November 24, 2015, Gallagher concealed or failed to disclose a material fact in its November 2015 Disclosure. Specifically, as alleged in paragraph 20

above, Gallagher concealed or failed to disclose that the total fees it received or would receive from carriers exceeded $195,650.00 per year.

    a.    Gallagher knew or should have known that this material fact should be disclosed.

    b.    Gallagher knew its concealment of or failure to disclose the material fact would induce the School Board to enter the Renewal 3 of Original Services Agreement.

    c.    Gallagher had a duty to disclose this material fact.

    d.    The School Board detrimentally relied on the concealed information.

71.    On December 20, 2017, Gallagher concealed or failed to disclose a material fact in its December 2017 Disclosure. Specifically, as alleged in paragraph 20 above, Gallagher concealed or failed to disclose that the total fees it received or would receive from carriers exceeded $184,500.00 per year.

    a.    Gallagher knew or should have known that this material fact should be disclosed.

    b.    Gallagher knew its concealment of or failure to disclose the material fact would induce the School Board to enter the Renewal of Second Services Agreement.

    c.    Gallagher had a duty to disclose this material fact.

    d.    The School Board detrimentally relied on the concealed information.

72.     The School Board entered Renewal 1, 2, and 3 of Original Services Agreement and the Renewal of Second Services Agreement, totally unaware that Gallagher had been paid millions of dollars in secret commissions from the very carriers Gallagher had agreed to scrutinize and supervise.

73.     Gallagher concealed or failed to disclose the true nature of its compensation, and Gallagher knew or should have known of the impropriety of the secret commissions.

74.     As a direct and proximate result, the School Board suffered direct and consequential damages, including, without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board. Damages also include the secret commissions paid to Gallagher which must be disgorged to the School Board. The School Board requests that all damages due to be recovered be contributed to the Trust.

WHEREFORE, the School Board demands judgment against Gallagher for compensatory damages, punitive damages, and costs.

s/ Tucker H. Byrd
**Tucker H. Byrd**
Florida Bar No. 381632
**Min Cho**
Florida Bar No. 754331
**Andrew M. Domingoes**
Florida Bar No. 1010448
BYRD CAMPBELL, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
TByrd@ByrdCampbell.com

MCho@ByrdCampbell.com
ADomingoes@ByrdCampbell.com
*Attorneys for Plaintiff*

**<Certificate of Service on Following Page>**

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 30, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Tucker H. Byrd

**Tucker H. Byrd**
Florida Bar No. 381632
**Min Cho**
Florida Bar No. 754331
**Andrew M. Domingoes**
Florida Bar No. 1010448
BYRD CAMPBELL, P.A.
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
TByrd@ByrdCampbell.com
MCho@ByrdCampbell.com
ADomingoes@ByrdCampbell.com
*Attorneys for Plaintiff*
