**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SCHOOL BOARD OF OSCEOLA
COUNTY, FLORIDA,

    Plaintiff,

v.

    Case No. 6:21-cv-01979-ACC-LRH

GALLAGHER BENEFIT SERVICES,
INC.,

    Defendant.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE THE SCHOOL BOARD'S AMENDED COMPLAINT**

Plaintiff, School Board of Osceola County, Florida ("School Board") responds to Defendant, Gallagher Benefit Services, Inc.'s ("Defendant") Motion to Dismiss and Motion to Strike the Amended Complaint (Doc. 20) ("Motion"), as follows:

## INTRODUCTION

For almost ten years, the School Board trusted that Defendant would act in the School Board's best interest when providing employee benefit consulting services. The School Board selected Defendant based on this trust and in reliance on Defendant's representation that it would not "accept any commissions, contingencies, supplemental compensation or income nor in-kind services on any insurance products purchased by the School Board." Unbeknownst to the School Board, however, Defendant was negotiating backroom deals where it received over **$2 million** in "secret

commissions" from the very carriers that Defendant recommended. The School Board has sued Defendant for breach of contract, breach of fiduciary duty and fraud based on these wrongful actions. (Doc. 1-1). Defendant removed this case to federal court (Doc. 1) and filed a motion to dismiss and strike the Complaint (Doc. 5). The Court denied the motion to dismiss, citing Defendant's failure to comply with Local Rule 3.01(g). (Doc. 10). After consultation with counsel, the School Board filed its Amended Complaint, (Doc. 13), and Defendant has again moved to dismiss. (Doc. 20). The Court should deny the Motion.

## FACTUAL ALLEGATIONS

In November 2011, Defendant participated in a request for proposal (the "2011 RFP") process to be selected as the School Board's consultant to provide consulting services in selecting employee benefits programs. (Doc. 13, ¶¶ 7–8). Defendant's Response to the 2011 RFP included an addendum signed by Defendant on December 12, 2011 ("RFP Addendum"). (Doc. 13-2, pg. 79). By signing the RFP Addendum, Defendant agreed to the following:

> **Section G. Pricing and Compensation Guidelines**
> Please note that the School Board will not allow the Awarded Consultant to accept any commissions, contingencies, supplemental compensation or income nor in-kind services on any insurance products purchased for the School Board.

(*Id.*). The Response to the 2011 RFP also included a Request for Proposal form, which Defendant signed, acknowledging it "read and underst[ood] the requirements of this Invitation to Bid . . . and, that [Defendant] will comply with all requirements of this offer and any contract(s) and/or other transactions required by this award." (*Id.*, pg.

2

61).

In its Response to the 2011 RFP, Defendant further promised that it would represent the best interests of the School Board in its dealings with all carriers and vendors, (*Id.*, pg. 47), and "would fully disclose all compensation received." (*Id.*, pg. 43). The Response to the 2011 RFP even included a "Conflict of Interest Affidavit" in which Defendant represented that none of its employees or officers had "any conflict of interest, real or apparent, due to ownership, other clients, contracts, or interests associated with this project." (*Id.*, pg. 77).

The School Board ultimately selected Defendant based on its Response to the 2011 RFP, and on February 21, 2012, the School Board and Defendant entered a two-year Services Agreement—which was renewed on January 21, 2014, November 18, 2014, and again on February 16, 2016 (collectively, the "Original Services Agreement"). (Doc. 13, ¶¶ 14, 18, 19, 21). Under the Original Services Agreement, the School Board secured a commitment from Defendant to perform myriad services, including analyses, procurement assistance, implementation, development of deliverables and milestones and project management, for which Defendant agreed to be paid a total fee not to exceed $195,650.00 per year. (*Id.*, ¶ 15). Each renewal of the Original Services Agreement also represented that this total fee would be paid by commissions earned from insurance products. (*Id.*, ¶¶ 18– 19, 21).

On a yearly basis, Defendant provided the School Board a compensation disclosure statement ("Disclosures") reaffirming its contractual obligation under the Original Services Agreement that it would act in the best interest of the School Board

3

and that it would be paid 0% in commissions or supplemental compensation (including any indirect payments or "finder's fees") from any Medical TPA or Medical Stop Loss insurance companies. (*Id.*, ¶¶ 16, 17, 20, 22). The School Board relied on these Disclosures each year when deciding to enter the three renewals of the Original Agreement. (*Id.*, ¶¶ 18, 19, 21).

On October 19, 2016, the School Board issued another RFP (the "2016 RFP"). (Doc. 13-11). The 2016 RFP included a list of questions that the School Board received from consultants interested in submitting a response to the RFP. (*Id.*, pgs. 63–69). The School Board answered all the questions, clarifying its intent that the selected consultant's fee would be paid by capped commissions. (*Id.*, pg. 68).

Defendant submitted a Response to the 2016 RFP. (Doc. 13-12). In its Response to the 2016 RFP, Defendant again made misrepresentations to the School Board, promising that it would "maintain its current compensation structure" and that it would work to secure the "absolute best pricing and terms for [its] clients." (*Id.*, pgs. 30, 53). Defendant also specifically identified the Original Services Agreement as a current or recently completed project which best illustrated the experience it had in providing consulting services, identifying the "Size of engagement (project dollar value)" as $195,500.00 per year." (Doc. 13-12, pg. 14).

Believing that Defendant gave full and honest disclosures over the life of the Original Services Agreement, the School Board and Defendant entered a second agreement on February 7, 2017, which was renewed on February 19, 2019 (collectively, the "Second Services Agreement"). (*Id.*, ¶¶ 30, 34). The Second

4

Agreement allowed a total fixed fee of $184,500.00 per year to be "paid for out of insurance commissions." (*Id.*, ¶ 31).

In accordance with the Original and Second Agreement, Defendant assisted the School Board in procuring presumably competitive proposals from qualified insurance carriers and third-party administrators for services related to managing the School Board's self-funded health program for active employees and retirees and their dependents. (*Id.*, ¶ 35).

Unbeknownst to the School Board, however, Defendant collected secret insurance commissions of over **$2 million** from the very carriers it recommended that the School Board retain. (*Id.*, ¶¶ 35, 36). These secret commissions significantly exceeded the capped fees that Defendant agreed to be paid under the Original Services Agreement and Second Services Agreement. (*Id.*). Rather than insulate the School Board from various insurance carriers, Gallagher collected secret commissions which exceeded the annual total fee or fixed fee allowed by the Original Services Agreement and Second Services Agreement, as renewed, with the School Board. (*Id.*, ¶ 37).

## ARGUMENT

A. **Counts I and II for breach of contract state plausible claims.**

Counts I and II allege claims for breach of contract. They are separate counts because Defendant breached two different agreements: (1) the Original Services Agreement which covered the period from February 21, 2012, to February 21, 2017. (Doc. 20, ¶¶ 14–22); and (2) the Second Services Agreement, which covered the period

from February 7, 2017 to May 31, 2019. (*Id.*, ¶¶ 30–34).

In *Upofloor Am., Inc. v. S. Squared Sustainable Surfaces, LLC*, Case No. 6:16-cv-179-Orl-37DCl, 2016 WL 5933422, at *5 (M.D. Fla. Oct. 12, 2016), Judge Dalton recognized that Rule 8 sets a very low threshold to state a plausible claim for breach of contract:

> [a] plaintiff need not, however, plead detailed and particular facts to support a claim for breach of contract. Rule 8 sets a very low threshold for determining the sufficiency of the facts in the statement of claim and requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This standard requires the plaintiff to plead just enough to give the defendant fair notice of "what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sonema N.A.*, 534 U.S. 506 (2002).

Here, Counts I and II contain a short and plain statement of the facts that give Defendant fair notice of the claims against it. In support of these elements, the School Board alleges the following short and plain statement of facts:

(a) Under the Services Agreements, Defendant agreed to perform myriad services, including, discussing, advising, and recommending solutions that would be in the best interest of the School Board and not that of the plan administrators and/or insurance carriers. (*Id.*, ¶¶ 15, 42(a); 47(a)).

(b) Despite agreeing that its fees would be paid by commission, Defendant expressly agreed that its total fees would not exceed $195,650.00, per year, under the Original Services Agreement, and $184,500.00, per year under the Second Services Agreement. (*Id.*, ¶¶ 18, 19, 21, 34, 42(c); 47(c)).

(c) In accordance with the Services Agreements, Defendant assisted the School Board in procuring presumably competitive proposals from qualified insurance carriers and third-party administrators for services related to managing the School Board's self-funded health program for active employees and qualified retirees and their dependents. (*Id.*, ¶ 35).

(d) Despite Defendant's agreement that its total fees would not exceed $195,650.00 and $184,500.00, per year, and that its fees would be paid by commissions earned from insurance products, Defendant collected insurance commissions and other compensation of over $2 million from the very carriers it recommended to the School Board. (*Id.*, ¶ 36).

(e) Defendant failed to perform activities, discuss, advise, and recommend solutions that was in the best interest of the School Board and not that of plan administrators and/or insurance carriers. (*Id.*, ¶¶ 42(a); 47(a)).

(f) Defendant failed to remain impartial during all business transactions (including RFPs). (*Id.*, ¶ 42(b); 47(b)).

These factual allegations give Defendant fair notice that the School Board is suing Defendant for breaching the Original Services Agreement and Second Services Agreement based on its broken promises that: (a) its total fees would not exceed $195,650.00 or $184,500.00, per year, as defined in the Services Agreements; (b) that those fees would be paid by commissions earned from insurance products; and (c) that it would remain impartial and act in the best interest of the School Board and not the carriers that gave them over $2 million in "secret commissions."

In an attempt to avoid liability, Defendant points to the fine print of the Disclosures. It claims that it was entitled to keep the secret commissions because the Disclosures do not preclude Defendant from collecting "secret commissions" for services that were not listed in the Original Agreement. (Doc. 20, pg. 8). This argument is without merit as both Services Agreements required Defendant to perform services not expressly included Agreements.

Attachment A of the Original Services Agreement provides a non-exhaustive list of employee benefit consulting services that Defendant was to provide to the School Board. (Doc. 13-3, pgs. 8–9). It goes into extreme detail that Defendant is to provide "**Implementation, Transition and On-going Administrative Support**," specifically requiring: "[t]he Awarded Consulting Firm shall provide support, **including, but not limited to**: . . . ." (*Id.*, pg. 7 ¶ (D)) (emphasis added). It also goes into detail that Defendant is to provide "**Deliverables and Milestones**," specifically requiring: "[t]he Awarded Consultant Firm shall provide written deliverables **including, but not limited to the following** . . . ." (*Id.*, pg. 8 ¶ (D)) (emphasis added). The Second Services Agreement contains identical language and provides a non-exhaustive list of services to be performed. (Doc. 13-13, pgs. 1–2 ("The Awarded Consulting Firm shall provide support, **including, but not limited to** . . . .") (emphasis added). The use of the words "including, but not limited to" establish that the Services Agreements required Defendant to perform services which were not expressly listed. *Rottman v. Vista Health Plan, Inc.*, Case No. 05-80663-CIV-

MIDDLEBROOKS/JOHNSON, 2006 WL 8433611, at *3 (S.D. Fla. Apr. 11, 2006) (stating that the use of the phrase "including but not limited to" clearly indicates that a list is not exhaustive).

Defendant further argues that the Amended Complaint fails to allege that it was even paid $195,650.00 and $184,500.00 under the Services Agreements, describe any of the circumstances surrounding payment of the secret commisions, or explain how it failed to act in the School Board's best interest. (Doc. 20, pgs. 8–10). These arguments are also without merit. The fact that Defendant received over $2 million in "secret commissions"—which far exceeded the total fee or fixed fee to be earned under the Services Agreements—allows the Court to draw the reasonable inference that Defendant breached the Services Agreements by being paid too much and not acting in the best interests of the School Board. (Doc. 13, ¶ 37).

Finally, Defendant is incorrect to argue that the School Board cannot allege a breach of contract claim because it failed to plead a nexus between the underlying breach and damages. Defendant's acceptance of secret commissions and failure to act in the best interest of the School Board denied the School Board the full benefit of the Services Agreements. These allegations are sufficient to support a theory of damages.[1]

---

[1] Defendant takes issue with the School Board's decision not to include allegations relating to Cigna. However, this has no bearing on the sufficiency of School Board's claims in the Amended Complaint. *Paylan v. Bondi*, No. 8:15-CV-1366-T-36AEP, 2015 WL 5759933, at *2 (M.D. Fla. Sept. 23, 2015) ("Once accepted, the original pleading is abandoned by the amendment, is no longer a part of the pleader's averments against his adversary, and the amended complaint becomes the operative pleading in the case.") (collecting cases).

9

For these reasons, Counts I and II state claims that are plausible on their face. To the extent the Court disagrees, the School Board requests leave to amend those Counts to allege more facts.[2]

## B. Count III for Breach of Fiduciary Duty is not barred by the independent tort doctrine.

"Under Florida's independent tort doctrine, 'it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.'" *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, Case No. 8:20-cv-604-T-33JSS, 2020 WL 5350303, at * (M.D. Fla. Sept. 4, 2020). "To bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract." *Perez v. Scottsdale Ins. Co.*, Case No. 19-cv-22346-GAYLES, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020).

Here, Count III's claim for breach of fiduciary duty is not barred by the independent tort doctrine. It alleges that Defendant committed tortious acts separate and apart from breach of its contracts with the School Board. Specifically, Defendant made false statements **prior** to the parties entering the Original Services Agreement,

---

[2] Buried in a footnote, Defendant asks this Court to rely on the arguments it raised in its original motion to dismiss (Doc. 5) to stay this case pending the outcome of another lawsuit involving Cigna should the instant motion to dismiss be denied. (Doc. 20, pg. 12 n.10). This is improper. A litigant may not raise substantive arguments in a footnote. *See Dresser v. HealthCare Servs., Inc.*, No. 8:12-cv-1572-T-24MAP, 2013 WL 82155, at *10 n.1 (M.D. Fla. Jan. 7, 2013) (declining to address arguments raised in a footnote). Further, the allegations in the Amended Complaint do not mention Cigna. Finally, Defendant never conferred with counsel regarding the arguments raised in its first motion to dismiss as required under Local Rule 3.01(g). Indeed, the Court denied the original motion to dismiss because of Defendant's failure to comply with Rule 3.01(g).

**prior** to each subsequent renewal of the Original Services Agreement, and **prior** to the Second Services Agreement. (Doc. 13, ¶¶ 9–13, 16–17, 20, 22, 24, 26–29, 54). The School Board relied on those false statements and trusted that Defendant would protect and act in the best interest of the School Board. (*Id.*, ¶ 56). These tortious acts are separate and apart from the breach of contracts. Accordingly, the Court should find that the School Board's claim for breach of fiduciary duty has been properly pled. To the extent this Court finds that this claim is deficient, the School Board requests leave to amend any technical deficiency.

**C.    Counts IV and V for fraud are pled with sufficient particularity.**

"To comply with Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Ruff v. Alianz Life Ins. Co. of N. Am.*, Case No. 6:19-cv-1709-WWB-DCI, 2021 WL 1053166, at *4 (M.D. Fla. Mar. 8, 2021).

Both Count IV for fraud in inducement and Count V for fraudulent concealment are pled with sufficient particularity—the School Board points to a series of specific misrepresentations Defendant made in responding to the RFPs and in documents in which it purportedly disclosed the entirety of its compensation. Count IV alleges that on December 12, 2011, Defendant submitted a Response to 2011 RFP whereby it confirmed the following: "Please note that the School Board will not allow the Awarded Consultant to accept any commissions, contingencies, supplemental,

11

compensation or income nor in-kind services on any insurance products purchased for the School Board." (Doc. 13-2, pg. 79). Indeed, among the many misrepresentations alleged in the Amended Complaint, Defendant represented that it would act in the best interests of the School Board and that it "would fully disclose all compensation received." (*Id.*, pgs. 43, 47).

Defendant made similar misrepresentations in its Response to the 2016 RFP. (Doc. 13, ¶¶ 24–29). Again, Gallagher represented that it would act in the best interest of the School Board and to maintain its current compensation structure under the Original Services Agreement. (Doc. 13-12, pgs. 30, 53). Defendant even identified the Original Services Agreement as a current or recently completed project which best illustrated its experience in providing consulting services. (*Id.*, pg. 14). Gallagher identified that the "Size of engagement (project dollar value)" was $195,000.00 per year. (*Id.*).

As to Count V for fraudulent concealment, Defendant provided false Disclosures on December 13, 2012, December 10, 2013, and November 24, 2015, in which it purported to disclose its annual compensation but failed to disclose and concealed that its total compensation exceeded $195,650.00 per year. (*Id.*, ¶¶ 16, 17, 20, 69, 70). Again, on December 20, 2017, Defendant provided another false Disclosure in which it failed to disclose and concealed that its total compensation received from carriers would not exceed $184,500.00 per year. (*Id.*, ¶¶ 32, 71).

Contrary to Defendant's contention, the allegations in the Amended Complaint are far from conclusory. The School Board's citation to documents and statements

evincing Defendant's specific misrepresentations are more than sufficient to satisfy the pleading standard required by Rule 9(b). *See In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d 1342, 1355 (N.D. Ga. 2000) ("In practice, [Rule 9(b)'s] requirement may be easily satisfied by references to internal memoranda or other documents, press releases, news articles and government-mandated filings."); *Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 680 (M.D. Fla. 1999) ("Federal Rule of Civil Procedure 9(b) is satisfied if there is a sufficient identification of the circumstances constituting fraud to allow a defendant to adequately answer the plaintiff's allegations.") (citing *Denny v. Carey,* 72 F.R.D. 574 (E.D. Pa. 1976)).

For these reasons, Counts IV and V plead fraud with sufficient particularity. To the extent the Court disagrees, the School Board requests leave to amend those Counts to allege more facts.

**D.  Disgorgement is a proper remedy for breach of contract and tort claims.**

Defendant improperly seeks to dismiss the School Board's claims for disgorgement of Defendant's profits contending that the School Board has an adequate remedy at law available. Importantly, however, Florida law clearly permits a plaintiff to seek disgorgement damages based on a Defendant's tortious actions for fraud and breach of fiduciary duty. *See Bailey v. St. Louis*, 196 So. 3d 375, (Fla. 2d DCA 2016) (reversing judgment on plaintiff's breach of fiduciary duty claim and remanding back to the trial court to award disgorgement damages); *King Mountain Condo. Ass'n v. Gundlack*, 425 So. 2d 569, 572 (Fla. 4th DCA 1982) (holding that disgorgement of secret profits as a remedy for breach of fiduciary duty).

The case on which Defendant relies, *City of Riviera Beach v. Barber*, 764 So. 2d 601 (Fla. 4th DCA 1998), has no bearing on whether disgorgement of profits is available as a remedy for breach of fiduciary duty and fraud. There, the Court held that specific performance was not available as a remedy to enforce an employment contract where money damages were available. Notably, the *Barber* case does not even use the words: "disgorgement of profits." *Id.* at 602. The School Board is not seeking specific performance of the Services Agreements but to disgorge Defendant's ill-gotten gains.

Contrary to Defendant's assertions, disgorgement of Defendant's profits is, by its very definition, a claim for money damages. The School Board seeks to recover the ill-gotten profits, i.e., money, Defendants earned by collecting secret commissions. *See Weinstein v. Aisenberg*, 758 So. 2d 705, 706 (Fla. 4th DCA 2000) ("The appellee has an adequate remedy at law, i.e., money damages."). Alternatively, the School Board's actual damages resulting from Defendant's failure to adequately perform under the Services Agreement are not an adequate remedy at law considering the over $2 million in ill-gotten gains Defendant earned in secret commissions over the course of the Services Agreements.

Further, Defendant's argument that profits cannot be disgorged to the School Board it never paid or that it lacks standing to seek this relief is a red-herring—the focus of disgorgement is on Defendant's ill-gotten gain, not compensation for the School Board's loss. *See* Restatement (Third) of Restitution and Unjust Enrichment § 49 cmt. a ("[D]isgorgement rules ... shift the focus of the remedy from measuring the

14

value of a benefit to measuring the profits derived from wrongful conduct ...."); *see also Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, (Fla. 3d DCA 2018) ("The equitable remedy of disgorgement is measured by the defendant's ill-gotten profits or gains rather than the plaintiff's losses."); *King Mountain Condo. Ass'n v. Gundlach*, 425 So.2d 569, 572 (Fla. 4th DCA 1982) (noting that disgorgement of secret profits was equitable in nature).

Finally, Defendant is incorrect to argue that Florida law precludes the rebating of commissions to insured. (Doc. 20, pg. 18). The remedy sought by the School Board is not a rebate but is instead an equitable remedy to disgorge Defendant's ill-gotten gains from its unlawful receipt of secret commissions totaling over $2 million. This remedy is necessary to prevent Defendant's wrongful enrichment based on its myriad lies and multiple breaches of contract and fiduciary duty to the School Board. *See Guyana Tel. & Tel. Co. v. Melbourne Int'l Communications, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003) (noting that plaintiff could seek restitution or disgorgement damages to prevent defendant's wrongful enrichment stemming from its tortious conduct).

E. **The School Board did not waive consequential or punitive damages.**

Defendant improperly seeks dismissal of the School Board's claims for consequential and punitive damages based on unenforceable limitation of liability waivers that were snuck into the various Disclosures **after** the parties entered the Original Agreement, and again **after** the parties entered the Second Services Agreement. (Doc. 13 at ¶¶ 16, 17, 20, 32, 33). "Modifications of contracts must be

supported by new consideration as well as the consent of both parties." *McGuire v. Adex Corp.*, Case No. 8:15-cv-2670-T-27AAS, 2017 WL 1422426, at * (M.D. Fla. Apr. 19, 2017).

Here, the Disclosures are not new contracts or enforceable modifications of the Original Services Agreement or the Second Agreement. There was no new consideration provided to the School Board in exchange for the limited liability waivers. The Disclosures simply memorialized Defendant's existing obligation that it would act in the best interest of the School Board and purportedly disclosed how much Defendant would receive in annual compensation under the Services Agreements.

There is also a disputed issue of fact as to whether the School Board consented to the waivers, thus making it improper to decide this issue on a motion to dismiss. Specifically, it is a disputed issue as to whether Ken Debord, the School Board's Director of Risk Management, who signed the Disclosures, had the actual or apparent authority to sign the limitation of liability agreement and waive the School Board's rights to seek consequential or punitive damages. This is evidenced by the fact that the Original Services Agreement, and each subsequent renewal of the Original Services Agreement, which were signed by the then-existing Chairs of the School Board. (*Id.*, ¶¶ 14, 18, 19, 21).

Moreover, to the extent Defendant argues that section 768.72, Florida Statutes, bars pleading punitive damages, it is incorrect. "The Eleventh Circuit has held . . . that Section 768.72's procedural mandates are inapplicable in federal courts." *Bicz v. Colliers Int'l Detroit, LLC*, No. 8:17-CV-1840-T-17CPT, 2019 WL 4714373, at *6 (M.D.

Fla. Sept. 10, 2019), *report and recommendation adopted sub nom.*, 2019 WL 4696387 (M.D. Fla. Sept. 26, 2019) (citing *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001).

Finally, hidden in a footnote, Defendant argues that the School Board failed to comply with Rule 9(g)'s requirement that special damages be specifically stated. This argument is without merit. The Amended Complaint clearly alleges that it suffered "consequential damages, including without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board" and "the secret commissions paid to [Defendant] which must be disgorged to the School Board." (Doc. 13, ¶¶ 59, 66, and 74).

### F.    The Court should not strike the word "greed" from the Amended Complaint.

Defendant improperly requests the Court to strike the word "greed" from paragraph 1 of the Amended Complaint—as the word is apparently immaterial and impertinent. (Doc. 20 at 20). However, Defendant's greed is clearly relevant to the School Board's claims for punitive damages and for disgorgement damages. *Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1204-05 (Fla. 2d DCA 2019) (recognizing the use of the word "greed" in a complaint claiming punitive damages).

### CONCLUSION

The Court should deny the Motion based on the reasons set forth in this response. Should the Motion be granted in any respect, the School Board requests

leave to amend to address any purported technical deficiencies in the Amended Complaint. *See Bryant v. Dupree*, 252 F.3d 1161, 1163-65 (11th Cir. 2001).

        *s/ Jason Ward Johnson*
        **Tucker H. Byrd**
        Florida Bar No. 381632
        **Jason Ward Johnson**
        Florida Bar No. 186538
        **Andrew M. Domingoes**
        Florida Bar No. 1010448
        BYRD CAMPBELL, P.A.
        180 Park Avenue North, Suite 2A
        Winter Park, Florida 32789
        Telephone: (407) 392-2285
        Facsimile: (407) 392-2286
        Primary Email: TByrd@ByrdCampbell.com
        Primary Email: JJohnson@ByrdCampbell.com
        Primary Email: ADomingoes@ByrdCampbell.com
        Secondary Email: RMicale@ByrdCampbell.com
        *Attorneys for Plaintiff*

<u>**<CERTIFICATE OF SERVICE ON FOLLOWING PAGE>**</u>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2022, I served the foregoing via electronic mail to all counsel of record.

            *s/ Jason Ward Johnson*
            **Tucker H. Byrd**
            Florida Bar No. 381632
            **Jason Ward Johnson**
            Florida Bar No. 186538
            **Andrew M. Domingoes**
            Florida Bar No. 1010448
            BYRD CAMPBELL, P.A.
            180 Park Avenue North, Suite 2A
            Winter Park, Florida 32789
            Telephone: (407) 392-2285
            Facsimile: (407) 392-2286
            Primary Email: TByrd@ByrdCampbell.com
            Primary Email: JJohnson@ByrdCampbell.com
            Primary Email: ADomingoes@ByrdCampbell.com
            Secondary Email: RMicale@ByrdCampbell.com
            *Attorneys for Plaintiff*