## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**SCHOOL BOARD OF OSCEOLA COUNTY, FLORIDA,**

       **Plaintiff,**

**v.**                          **Case No.   6:21-cv-1979-ACC-LHP**

**GALLAGHER BENEFIT SERVICES, INC.,**

       **Defendant.**

_____

## ORDER

This cause comes before the Court on Defendant Gallagher Benefit Services, Inc.'s ("Gallagher") Motion to Dismiss and Motion to Strike the Amended Complaint. (Doc. 20). Plaintiff School Board of Osceola County, Florida ("School Board" or "the Board") responded, (Doc. 21), and Gallagher replied. (Doc. 26). Accordingly, this matter is ripe for review. For the reasons explained below, Gallagher's Motion will be denied.

## BACKGROUND

Gallagher is an insurance broker and consultant. (Doc. 13-2 at 5). For more than seven years, Gallagher helped the School Board select and administer its employee health benefit plan. (Doc. 13 ¶ 7). In exchange for its services, Gallagher received annual fees. (*Id.* ¶ 2). The School Board did not pay Gallagher's fees;

instead, insurance companies paid them through commissions. (*Id.* ¶ 31). To avoid the self-serving incentives that could accompany this financial arrangement, the Board capped Gallagher's fees at a fixed annual amount ranging from $184,500 to $195,650. (*Id.* ¶¶ 15, 31). Despite the cap, the School Board alleges that Gallagher accepted more than $2 million in "secret commissions" from insurance carriers it recommended to the Board. (*Id.* ¶ 35). Consequently, the School Board sued Gallagher.

## I.      The First Request for Proposal and Gallagher's Response

In November 2011, the School Board requested proposals from insurance consultants that could assist it in selecting and administering its employee health benefit plan. (*Id.* ¶ 7). Gallagher responded to the request. ("the 2011 Response"). (Doc. 13-2). Gallagher sold itself as a company that was well-positioned to provide consulting and brokerage services to the Board. (*Id.* at 5). It also stated that it would "[r]emain impartial during all business transactions," (*id.* at 43), "disclose all compensation received," (*id.*), and "represent [the Board's] best interests in all ongoing interactions." (*Id.* at 47).

## II.      The 2012 Services Contract

After reviewing the consultants' proposals, the School Board selected Gallagher, and the parties entered a contract for consulting and brokerage services ("the 2012 Services Contract"). (Doc. 13-3). In accordance with the contract, Gallagher procured competitive proposals from insurance carriers for products and

services related to the Board's employee health benefit plan. (Doc. 13 ¶¶ 7, 35). In exchange, Gallagher received fees paid by commissions from insurance carriers. (*Id.* ¶¶ 15–16). The Board capped Gallagher's fees annually at $195,650. (Doc. 13-2 at 9).

### III.   The Second Request for Proposal and Gallagher's Response

With the 2012 Services Contract set to expire,[1] the School Board requested new proposals from insurance consultants in 2016. (Doc. 13 ¶ 7). Again, Gallagher responded to the Board's request ("the 2016 Response"). (Doc. 13-12). In its Response, Gallagher described its past work with the School Board and listed the "[s]ize of engagement (project dollar value)" as $195,000 per year. (*Id.* at 14).

### IV.   The 2017 Services Contract

The School Board and Gallagher entered a second services contract in 2017 ("the 2017 Services Contract"). (Doc. 13-13). The 2017 Services Contract largely mirrored their prior contract, though it reduced Gallagher's annual fee cap from $195,650 to $184,500. (*Id.* at 2). The parties renewed the 2017 Services Contract once, in 2019. (Doc. 13 ¶ 34).

### V.   The Annual Compensation Disclosures

During both Services Contracts, Gallagher submitted annual "Client Coverage Acknowledgment and Compensation Disclosure Statements" ("Compensation

---

[1] The 2012 Services Contract expired in 2014. However, the parties renewed the Contract three times—for three, one-year periods—beginning in 2014. (Doc. 13 ¶¶ 18–19, 21).

Disclosures"). (Doc. 13-4). In it, Gallagher identified the insurance carriers that paid its fees and the two forms of compensation it received—"commissions" and "supplemental compensation." (*Id.*). Both forms of compensation are on a chart that shows the percentage of fees paid by each carrier. (*Id.*). Each form of compensation has a footnote. The footnote next to "Supplemental Compensation" reads:

> Gallagher companies may receive supplemental compensation referred to in a variety of terms and definitions, such as contingent commissions, additional commissions and supplemental commissions.

(Doc. 13-8 at 1).

## VI.   Gallagher's "Secret Commissions"

The School Board alleges that Gallagher—during the course of their relationship—collected over $2 million in "secret commisions" from the insurance carriers it recommended to the Board. (Doc. 13 ¶ 36). The commissions, according to the School Board, not only exceeded the cap in both Services Contracts, but irremediably impaired Gallagher's objectivety, causing it to recommend carriers to the Board that failed to carry out their contractual duties. (*Id.* ¶ 2). Consequently, the School Board brought suit.

The Board brings two counts for breach of contract—one based on the 2012 Services Contract and its subsequent renewals (Count I) and one based on the 2017 Services Contract (Count II). (Doc. 13). The School Board also claims that Gallagher breached its fiduciary duty (Count III) fraudulently induced it to enter the Services Contracts (Count IV) and fraudulently concealed material facts in its Compensation

Disclosures (Count V). (*Id.*). Gallagher now moves to dismiss the Amended Complaint. (Doc. 20).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the court is able to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The court must accept the factual allegations in the complaint as true, and all reasonable inferences should be drawn in favor of the plaintiff. *Iqbal*, 556 U.S. at 678. However, legal conclusions are not entitled to the assumption of truth, and threadbare recitals of the legal elements do not suffice. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Ultimately, the factual allegations must raise a right to relief that is more than "speculative." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## DISCUSSION

### I.    Breach of Contract

A breach of contract claim has three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*,

320 F. Supp. 3d 1285, 1295 (M.D. Fla. 2018). In its Motion, Gallagher attacks the second and third element. It argues that the School Board failed to allege a plausible material breach and failed to adequately plead damages. (Doc. 20 at 7–9, 11–12).

## A. The School Board Pleaded a Material Breach

To plead a material breach, the plaintiff must allege facts that make the breach plausible and notify the defendant of the grounds on which the breach rests. *Sanfelippo v. Cincinnati Ins.*, No. 2:20-cv-527-SPC-MRM, 2020 WL 5203531, at *1 (M.D. Fla. Sept. 1, 2020). A plaintiff gives adequate notice when it identifies or describes the contractual provisions the defendant breached. *Pierce v. State Farm Mut. Auto. Ins.*, No. 1:14-cv-22691-KMW-AMS, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014).

The School Board believes Gallagher breached the 2012 and 2017 Services Contracts in two ways—first, by accepting excessive commissions, (*Doc. 13* ¶¶ 42, 47), and second, by failing to act in good faith and remain impartial. (*Id.*). Gallagher contends that neither allegation is set forth with sufficient detail. (Doc. 20 at 7–9). The Court disagrees.

### i.    Excessive Commissions

As previously noted, the Services Contacts capped Gallagher's annual fees at $184,500 and $195,650. (Doc. 13 ¶ 2). The School Board claims that Gallagher breached the fee-cap provisions when it accepted more than $2 million in commissions from insurance carriers it recommended to the Board. (*Id.* ¶¶ 42, 47).

These allegations state a material breach of contract. The Board identified the specific conduct underlying the breach—Gallagher's acceptance of more than $2 million in insurance commissions. *See Roman v. Spirit Airlines, Inc.*, No. 0:19-cv-61461-RAR-JMS, 2019 WL 9093467, at *3 (S.D. Fla. Oct. 20, 2019) (finding a plausible material breach because the plaintiff alleged the facts giving rise to the breach). It also identified the precise contractual provisions allegedly breached. *See Textiles Morales, S.A. de C.V. v. Green Paradigm Partners, LLC*, No. 8:10-cv-2298-MSS-EAJ, 2011 WL 2881666, at *2 (M.D. Fla. July 19, 2011) (finding a plausible material breach when the plaintiff identified the specific contractual provision breached). Accordingly, the Board pleaded a material breach.

Gallagher objects to this reasoning, but its arguments fail. Gallagher argues that the Amended Complaint is deficient because it does not identify who paid Gallagher's commissions or when they paid. (Doc. 20 at 9). However, Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement," not detailed factual allegations concerning the dates and characters involved. *See Green v. Dr. Kelly Malinoski, LLC*, No. 2:19-cv-556-NPM, 2019 WL 6173175, at *1 (M.D. Fla. Nov. 20, 2019) ("Plaintiff's failure to make detailed factual allegations concerning the dates and specific terms of the alleged contract does not warrant dismissal.").

Gallagher also argues that the School Board failed to identify the services it performed to earn the $2 million in commissions. (Doc. 20 at 9). But at this stage of the litigation, the School Board need not identify the specific services—from among

the many listed in the Contracts—that Gallagher performed to earn the excessive commissions. (Doc. 13-3 at 7; 13-13 at 12). Drawing all reasonable inferences in favor of the School Board, it is plausible that Gallagher's excessive commissions were related to services and products that Gallagher procured for the Board.[2]

Finally, Gallagher argues that the Compensation Disclosures attached as exhibits to the Amended Complaint "expressly and unambiguously" contradict the Board's allegation of breach. (Doc. 20 at 8). The Disclosures identify the insurance carriers that paid Gallagher's fees and the two forms of compensation Gallagher received—commissions and supplemental compensation. (*Id.*). The term "Supplemental Compensation" contains a footnote that reads:

> *Gallagher companies may receive supplemental compensation* referred to in a variety of terms and definitions, such as contingent commissions, additional commissions and supplemental commissions.

(*Id.*) (emphasis added). Latching onto the italicized language, Gallagher argues that the Compensation Disclosures unambiguously permit it to receive supplemental compensation; thus, Gallagher contends that the School Board cannot plausibly plead a material breach. (Doc. 20 at 8).

Two problems plague Gallagher's argument. For one, it is not clear whether the Compensation Disclosures are binding contracts. A binding contract requires an

---

[2] To be sure, the School Board's Amended Complaint is not a model of clarity. The Board does not specify the relationship between the commissions Gallagher received and the services, products, or plans it procured on the School Board's behalf. While that relationship could be relevant at summary judgment, the Court need not address it at this stage.

exchange of consideration. *Wright & Seaton, Inc. v. Prescott*, 420 So. 2d 623, 625 (Fla. 4th DCA 1982). Consideration is present when some right, interest, or benefit accrues to the party, or some forbearance, detriment, or responsibility is undertaken by the other party. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1311 (11th Cir. 1998). The School Board provided consideration to Gallagher when—in a separate provision of the Compensation Disclosures—it waived Gallagher's liability for certain damages. (Doc. 13-4 at 2). But it is unclear what consideration Gallagher provided in exchange. Gallagher points to the same footnote that it claims gives it the right to receive "contingent, additional, and supplemental commissions." (Doc. 26 at 3). But Gallagher's ability to receive supplemental and contingent commissions is a benefit to itself, not the School Board. For that reason, it is not clear whether the Compensation Disclosures are binding contracts.

Even if the Compensation Disclosures were binding, the Court cannot ascribe meaning to the footnote because it is ambiguous. *BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins.*, 706 F. App'x 521, 524 (11th Cir. 2017)[3] (stating that ambiguity in a contract is sufficient to render discovery essential before the court will provide a definitive interpretation). The footnote states that Gallagher "*may*" receive supplemental compensation referred to in a variety of terms." (Doc. 13-4 at 1). But the word "may" has multiple meanings. *Compare* Webster's Ninth New

---

[3] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

Collegiate Dictionary, 735 (def. 1(a)) (9th ed. 1983) (defining the word to mean "have the ability to; have permission to; be free to") *with* Webster's Ninth New Collegiate Dictionary, 735 (def. 1(c)) (9th ed. 1983) (defining the word to "indicate possibility or probability"). While the footnote could be interpreted as giving Gallagher permission to receive supplemental compensation, it could also be interpreted as indicating the mere possibility that supplemental compensation is referred to by various names. Accordingly, it is not appropriate for the Court to interpret the provision at this stage of the litigation.

ii.    <u>Impartiality and Best Interests</u>

The School Board also claims that Gallagher breached the contracts by failing to "act in the School Board's best interest" and by failing to "remain impartial during all business transactions." (Doc. 13 ¶¶ 42, 47). Gallagher argues that the School Board has failed to plead facts that make these claims plausible. (Doc. 20 at 10).

The Court disagrees. The School Board alleges that Gallagher accepted more than $2 million in prohibited fees from the same insurance carriers that Gallagher recommended to the School Board. (Doc. 13 ¶¶ 35–37). It is reasonable to infer that these monetary incentives caused Gallagher to put its own financial interests before the Board's best interests. Accordingly, the School Board plausibly pleaded breaches of contract.

**B. The School Board Adequately Alleged Damages**

For both breach of contract claims, the School Board seeks "direct and

- 10 -

consequential damages, including, without limitation, those damages arising from having engaged carriers which failed to discharge their contractual duties to the School Board." (Doc. 13 ¶¶ 43, 48). Gallagher points out that the School Board never alleged which insurance carriers caused these damages or what duties they failed to discharge. (Doc. 20 at 11). On that basis, Gallagher argues that the Board failed to plead a sufficient nexus between breach and damages. (*Id.*)

The Court is not convinced. The Board's allegations show a reasonable nexus between Gallagher's failure to act in the Board's best interest when recommending insurance carriers, and the expenses the School Board faced after those carriers failed to discharge their duties to the Board. Gallagher may seek more information, like the carriers' identity or the specific duties they failed to discharge. But it must do so through discovery.

Moreover, Florida law allows nominal damages once a breach of contract has been established. *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1418 (11th Cir. 2011). So, even if the School Board cannot prove its actual damages, the court may award nominal damages. *Hutchison v. Tompkins*, 259 So. 2d 129, 132 (Fla. 1972) (reversing an order dismissing a complaint for failure to state a cause of action where the petition had not pleaded specific damages because nominal damages may be recovered); *Destiny Constr. Co. v. Martin K. Eby Constr.*, 662 So. 2d 388, 390 (Fla. 5th DCA 1995) (finding error when trial court struck complaint for overstating

damages because the plaintiff would be entitled to nominal damages).[4] For those reasons, the Board's allegations of damages are sufficient.

## II.    Breach of Fiduciary Duty

Turning to Count III, the School Board claims that Gallagher breached its fiduciary duties to the Board. (Doc. 13 ¶¶ 54–58). Specifically, the Board maintains that Gallagher breached its duties when it failed to act in the Board's best interests and when it made various misrepresentations related to its compensation and conflicts of interest. (Doc. 13 ¶¶ 54–58). Gallagher asks the Court to dismiss Count III because it is barred by the "independent tort doctrine." (Doc. 20 at 12).

Florida's independent tort doctrine prohibits tort claims unless they are independent from claims for breach of contract. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014). To determine whether a breach of fiduciary duty claim is independent from a contract claim, courts look to the source of the duty. *Travelers Indem. Co. v. Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d 1332, 1345 (M.D. Fla. 2018), *aff'd*, 10 F.4th 1255 (11th Cir. 2021); *Jabil, Inc. v. Essentium, Inc.*, No. 8:19-cv-1567-KKM-SPF, 2020 WL 10353824, at *6 (M.D. Fla. May 29, 2020)

---

[4] Gallagher also asks the Court to dismiss the Board's claim for consequential damages. (Doc. 20 at 19). First, Gallagher argues that the School Board waived its right to consequential damages when it signed the Compensation Disclosures. (*Id.*). However, as explained above, it is not clear whether the Compensation Disclosures are binding contracts. *See infra* at 10–11. Second, Gallagher contends that the Board failed to specify the consequential damages it actually incurred. (Doc. 20 at 19). However, Gallagher makes this argument in a footnote, cites no case law to support its position, and engages in no analysis to explain why the Board's allegations fall short. The Court finds these arguments wholly unpersuasive.

("A tort claim and a breach of contract claim are distinct because the sources imposing the duties allegedly breached are distinct." (citation omitted)).

A breach of fiduciary duty claim is independent when the duty or relationship arises outside of, or independent from, the contract. *George & Co. LLC v. Spin Master Corp.*, No. 2:18-cv-SPC-MRM, 2018 WL 5268754, at *4 (M.D. Fla. Sept. 13, 2018) (finding the independent tort doctrine inapplicable because the parties' fiduciary relationship did not arise solely from their contract, but also from the plaintiff's reliance on the defendant); *Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-cv-CEH-AAS, 2021 WL 6091094, at *8 (M.D. Fla. Dec. 23, 2021) (finding the doctrine inapplicable because the broker's fiduciary duty of care hinged on obligations imposed by federal regulations, not contracts). On the other hand, a breach of fiduciary duty claim is not independent when the duty or relationship arises from an underlying contract. *Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, No.1:17-cv-22462-AHS, 2018 WL 7287192, at *10 (S.D. Fla. Jan. 31, 2018) (dismissing fiduciary duty claim because the fiduciary duties arose solely from the parties' contractual relationship); *XP Glob., Inc. v. AVM, L.P.*, No. 9:16-cv-80905-BB, 2016 WL 4987618, at *4 (S.D. Fla. Sept. 19, 2016) (dismissing claim because the plaintiff failed to set forth facts demonstrating that a fiduciary duty existed outside of the parties' contract).

An implied fiduciary relationship can arise between an insurance broker and the insured. *See Wachovia Ins. v. Toomey*, 994 So. 2d 980, 990 (Fla. 2008);

*Southtrust Bank & Right Equip. Co. v. Exp. Ins.*, 190 F. Supp. 2d 1304, 1308 (M.D. Fla. 2002). To plead an implied fiduciary relationship, the insured must allege facts showing that it placed trust in the insurance broker and that the broker accepted the insured's trust. *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017). If the insured fails to plead its dependency on the broker, the court will not find an implied fiduciary relationship. *Id.*

In this case, it is reasonable to infer that an implied fiduciary relationship arose between Gallagher (as insurance broker)[5] and the School Board (as the insured). The School Board placed its trust in Gallagher by relying upon it to select an appropriate benefits program. (Doc. 13 ¶ 52). The Board reposed such trust after Gallagher represented itself as an expert in the field. (Doc. 13–12 at 11) (stating that "no one has more [sic] large, public-sector experience" or "a better understanding of the provider community and the strengths and weaknesses of the various healthcare and service providers"). Gallagher accepted the School Board's trust by procuring insurance products on its behalf. Thus, it is plausible that an implied fiduciary relationship arose between Gallagher and the School Board. *See Fireman v. Marsh*

---

[5] An insurance broker is someone employed by the insured to procure insurance. *Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1046 (Fla. 2008) (stating that the broker acts as an agent to the insured, not the insurer). The School Board's Amended Complaint and exhibits suggest that Gallagher was employed by the Board to procure insurance on its behalf. See (Doc. 13 ¶ 15) (stating that Gallagher performed "procurement assistance"); (*Id.* ¶ 7) (stating that Gallagher assisted in selecting the School Board's employee benefit insurance plan); (Doc. 13-11 at 31); (Doc. 13-12 at 54) (proposing to charge the Board $50,000 per year for "Brokerage Services— Procurement Assistance"). Therefore, it is reasonable to believe that Gallagher acted as the School Board's insurance broker.

*USA, Inc.*, No. 9:12-cv-80206-DMM, 2012 WL 12942071, at *1 (S.D. Fla. July 10, 2012) (finding an implied fiduciary relationship when the broker held itself out as an expert, causing the insured to place trust in the broker, which the broker accepted by procuring coverage); *Southtrust Bank*, 190 F. Supp. 2d at 1308 (finding an implied fiduciary duty because the defendant represented itself as a highly experienced brokerage firm with specialized knowledge, causing the plaintiff to engage the broker).

When an implied fiduciary relationship exists between the insurance broker and the insured—as here—the relationship arises independent from any underlying contract and imposes extra-contractual duties upon the broker. *Marsh*, 2012 WL 12942071, at *4. Therefore, the independent tort doctrine does not bar the insured from suing for breach of fiduciary duty. *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (finding that the independent tort doctrine does not bar the insured's fiduciary duty claim against its insurance broker because the claim was necessarily based on extra-contractual duties); *Kanter v. Deitelbaum*, 271 Ill. App. 3d 750, 753 (Ill. App. Ct. 1995)[6] (holding that the breach of fiduciary duty claim was not barred by the economic loss doctrine because the broker's fiduciary duties were not solely defined by contract).[7]

---

[6] Florida courts have relied on *Kanter* when describing the implied fiduciary relationship between an insurance broker and the insured, *see Moss v. Appel*, 718 So. 2d 199, 201 (Fla. 4th DCA 1998), and when examining a broker's duty more generally. *See Randolph v. Mitchell*, 677 So. 2d 976, 978 (Fla. 5th DCA 1996).

[7] Florida's independent tort doctrine—like Illinois's economic loss doctrine—applies only

At this stage of the litigation, it appears that the Board's breach of fiduciary duty claim is based on duties that arose from the implied fiduciary relationship, not the parties' contracts. Accordingly, the Court cannot find this claim barred by the independent tort doctrine. *Tiara*, 991 F. Supp. 2d at 1279.[8]

### III.   Fraud

The School Board also brings claims for fraud in the inducement and fraudulent concealment. Both are subject to Rule 9(b)'s heightened-pleading standard. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the School Board must allege: (1) the precise statements or omissions; (2) the time and place of each statement and the person responsible for it; (3) the manner in which the statements or omissions misled the Board; and (4) the benefit obtained by Gallagher as a consequence of the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

The School Board's allegations satisfy Rule 9(b). In its Amended Complaint, the Board identified the precise representations Gallagher made in its 2011 and 2016 Responses regarding its compensation, conflicts of interest, and ability to remain impartial.[9] It also identified the specific information that Gallagher allegedly

---

where the fiduciary duty breached is defined by contract and does not arise outside the contract. *Kanter*, 271 Ill. App. 3d at 754.

[8] Gallagher may raise this issue again on summary judgment if discovery reveals that the claim does, in fact, stem from the underlying contracts.

[9] Specifically, Gallagher promised to customize an approach specific to the School Board's needs, remain objective in providing the best insurance carriers, fully disclose all compensation it received, and represent the Board's best interests in all interactions. (Doc. 13 ¶¶ 13, 62). Gallagher

concealed. (Doc. 13 ¶¶ 16–17) (stating that Gallagher concealed the total fees it received from carriers recommended to the Board). The Board alleged the time and place of each statement and when the concealment occurred. (*Id.* ¶¶ 9–13, 24–29, 62–63) (alleging that the misrepresentations occurred in Gallagher's 2011 and 2016 Responses); (*Id.* ¶¶ 69–71) (alleging that Gallagher concealed material facts in the 2012, 2013, 2015 and 2017 Compensation Disclosures). It also alleged that Gallagher's misrepresentations and concealment misled the Board by inducing it to execute the 2012 and 2017 Services Contracts. (*Id.* ¶¶ 62–63). Finally, the Board identified the benefits that Gallagher obtained from the fraud: commissions exceeding $2 million from insurers it recommended to the Board. (*Id.* ¶¶ 64, 72). Taken together, these allegations satisfy Rule 9(b)'s heightened-pleading standard.

Gallagher urges the Court to reach a different conclusion, but its arguments are unavailing. First, Gallagher states that the Board never identified the carriers who paid Gallagher, the amounts they paid, or the services Gallagher provided for the commissions. (Doc. 20 at 15). But those details are not required by Rule 9(b). To the contrary, Rule 9(b) only requires "the who, what, when, where, and why of a misrepresentation." *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020). The School Board provided just

---

also represented that no employee had a conflict of interest and that it was prohibited from accepting certain types of compensation in relation to any insurance products it purchased for the Board. (*Id.*).

that: it alleges that Gallagher (who) made material misrepresentations and concealed material facts regarding its compensation (what) in its 2011 and 2016 Responses and in its annual Compensation Disclosures (when and where) to obtain commissions under the Services Contracts (why). These allegations give Gallagher fair notice of the precise misconduct underlying both fraud claims. Nothing more is required.

Gallagher also suggests that the Board's allegations are insufficient because they preclude it from raising a statute of limitations defense. (Doc. 20 at 15–16). However, the statute of limitations is an affirmative defense that plaintiffs need not negate in their complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 846 (11th Cir. 2004). Dismissal is only warranted under Rule 12(b)(6) when it is apparent from the face of the complaint that the claim is time-barred. *Horsley v. Univ. of Ala.*, 564 F. App'x 1006, 1008 (11th Cir. 2014).

Here, it is not apparent from the face of the Amended Complaint that the Board's fraud claims are time barred. In Florida, a plaintiff must commence a fraud action within four years after it discovers, or should have discovered with due diligence, the facts giving rise to the fraud. Fla. Stat. § 95.031(2)(a). The School Board alleges that it was unaware Gallagher was receiving millions of dollars in "secret commissions" when it entered and renewed the Services Contracts. (Doc. 13 ¶¶ 2, 64). From this allegation, it is reasonable to infer that the School Board was not aware of Gallagher's alleged fraud three years ago in 2019—the last time the Board renewed the 2017 Services Agreement. *State Farm Mut. Auto. Ins. v.*

*Advantacare of Fla., LLC*, No. 6:19-cv-1837-CEM-LHP, 2020 WL 2630226, at *4 (M.D. Fla. May 22, 2020) (finding allegation of defendant's secret arrangement sufficient to imply that plaintiffs were not aware of the fraud). The Board was not—contrary to Gallagher's belief—required to negate the statute of limitations defense by alleging the precise time it discovered or should have discovered the fraud. *Craig Mcalpine, Vpma1, Inc. v. Dr.ing.hc.f.porsche A.G.*, No. 2:11-cv-618-SPC-DF, 2013 WL 12167926, at *4 (M.D. Fla. Mar. 27, 2013) (refusing to dismiss fraud claims based on the statute of limitations even though the complaint was silent as to when the plaintiff discovered or should have discovered the facts giving rise to the fraud); *Kravitz v. Evans Med. Ltd.*, 741 F. Supp. 2d 1299, 1303 (S.D. Fla. 2010) (same). Therefore, dismissal is not warranted.

## IV.   Remedies

### A. Disgorgement

With respect to its claims for breach of fiduciary duty and fraud, the School Board seeks to disgorge Gallagher of the $2 million in commissions. (Doc. 13 ¶¶ 59, 66, 74). The Board asks the Court to direct the funds to a trust for the benefit of its teachers. (*Id.*). Gallagher argues that the Board cannot seek disgorgement—an equitable remedy—because it is able to seek money damages—a legal remedy. (Doc. 20 at 17). The School Board counters that disgorgement of Gallagher's profits is, by definition, a remedy at law for money damages. (Doc. 21 at 14). Alternatively, the Board argues that disgorgement is available because its legal remedies are

inadequate. (*Id*.).

### i.     Disgorgement is an Equitable Remedy

Disgorgement is an equitable form of restitution. *Duty Free World, Inc. v. Mia. Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018); *King Mountain Condo. Ass'n v. Gundlach*, 425 So. 2d 569, 572 (Fla. 4th DCA 1982). However, a plaintiff cannot transform a remedy at law for money damages into an equitable remedy by simply labeling it "disgorgement." *Duty Free World,* 253 So. 3d at 693. Instead, courts look to the nature of the relief to determine whether the remedy is truly equitable, or merely legal. *Id.*

A remedy in restitution is legal—regardless of its label—when it imposes personal liability on the defendant to pay a sum of money for a benefit the plaintiff conferred. *Id.* at 697–99. For example, in *Duty Free World,* the plaintiffs pre-paid for products the defendant never delivered. *Id.* at 692. The plaintiffs sued for unjust enrichment, seeking "equitable relief, including disgorgement." *Id.* Despite the label, the court held that the plaintiffs were merely seeking monetary damages—a remedy at law. *Id.* at 697–99.[10] The court explained that the plaintiffs sought nothing more than money to compensate them for payments they made under the purchase order. *Id.* at 697. Because the plaintiffs did not trace the money to particular funds or

---

[10] The nature of the plaintiffs' relief was at issue because an arbitration agreement between the parties excepted "equitable or emergency relief" from its scope. *Duty Free World*, 253 So. 3d at 692.

property—or request a constructive trust to restore the property—they sought a legal, not equitable, form of restitution. *Id*. at 698.

On the other hand, restitution is equitable in nature when the plaintiff asserts a right to identifiable funds that belong to the plaintiff in good conscience. *Id.* at 699. Restitution is also equitable in nature when the plaintiff seeks to recover the profits produced by the defendant's violation of the plaintiff's legally protected rights, rather than compensation for a benefit the plaintiff conferred. *See* Restatement (Third) of Restitution & Unjust Enrichment § 51 cmt. a. (stating that disgorgement shifts the focus of the remedy from measuring the value of a benefit to measuring the profits derived from wrongful conduct); *Duty Free World*, 253 So. 3d at 699 (stating that the plaintiffs were not seeking disgorgement because they did not seek the profits produced by their payment to the defendants, but rather the payment itself). When restitution is equitable, the court will generally disgorge the funds by imposing a constructive trust or equitable lien. *Great-W. Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 213–14 (2002).

In this case, the School Board's allegations make clear that it is seeking the equitable remedy of disgorgement. The Board does not seek to impose personal liability on Gallagher for money the Board paid. Instead, it seeks to disgorge the ill-gotten profits that Gallagher obtained through fraudulent conduct. (Doc. 21 at 15). The Board identifies the specific funds that it seeks to disgorge—the $2 million in commissions—and it appears to seek a constructive trust over those funds. (Doc. 13

¶¶ 59, 66, 74) (asking the Court to direct the funds to a trust to be administered for the benefit of teachers serving the School Board). Finally, the Board itself acknowledges that the relief is equitable in nature. (Doc. 21 at 16 ("The remedy sought by the School Board is . . . an equitable remedy to disgorge Defendant's ill-gotten gains from its unlawful receipt of secret commissions totaling over $2 million.")). Accordingly, the School Board is seeking the equitable remedy of disgorgement.

ii.     The School Board's Amended Complaint does not show that an Adequate Remedy at Law Exists

Because the School Board is seeking an equitable remedy, the Court must determine whether an adequate remedy at law exists. *McNorton v. Pan Am. Bank of Orlando, N.A.*, 387 So. 2d 393, 399 (Fla. 5th DCA 1980) ("[W]here a complaint shows on its face that there exists an adequate remedy at law, there is no jurisdiction in equity."); *Veal v. Crown Auto Dealerships, Inc.*, No. 8:04-cv-323-JDW-MSS, 2006 WL 435693, at *5 (M.D. Fla. Feb. 21, 2006); *Cushman & Wakefield, Inc. v. Off. Depot, Inc.*, No. 9:08-cv-80321-DMM, 2008 WL 11409886, at *5 (S.D. Fla. Aug. 29, 2008). A remedy at law is not adequate unless it is certain, prompt, speedy, sufficient, full and complete, practical, and efficient in attaining the ends of justice. *Willis v. Fowler*, 136 So. 358, 364 (Fla. 1931); *McNorton*, 387 So. 2d at 399.

Gallagher argues that the School Board has a remedy at law in money damages for its fraud claims. (Doc. 20 at 17). However, it is not apparent from the

face of the Amended Complaint that the remedy at law is adequate. Florida uses two methods to measure damages for fraud. The first measure—the "out-of-pocket rule"—permits plaintiffs to recover the amount they actually lost. *See DuPuis v. 79th St. Hotel, Inc.*, 231 So. 2d 532, 536 (Fla. 3d DCA 1970). The second measure—the "benefit-of-the-bargain rule"—allows plaintiffs to recover the loss of their bargain, similar to recovery on a warranty. *Id.* It is not clear from the Amended Complaint that the School Board can recover Gallagher's commissions under either measure. Accordingly, it is not apparent that the Board has an adequate remedy at law.

### iii.   Disgorgement does not Constitute an Unlawful Rebate

Finally, Gallagher argues that the Court—should it disgorge Gallagher's commissions—would violate Florida's statutory prohibition against "rebating." (Doc. 20 at 18). Florida law prohibits "unlawful rebates," which it defines as, among other things:

> Paying, allowing, or giving, or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance contract, any unlawful rebate of premiums payable on the contract, any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract.

Fla. Stat. § 626.9541(1)(h)(1)(b).

Gallagher never explains why disgorgement of its profits constitutes an "unlawful rebate." And such a conclusion runs counter to the statute's plain language, which defines a rebate as a payment made "as *inducement* to" an insurance

contract. § 626.9541(1)(h)(1)(b) (emphasis added).[11] Thus, Gallagher's argument fails.

## V.   Punitive Damages

The School Board seeks punitive damages for Gallagher's breach of fiduciary duty and fraud. (Doc. 13 ¶¶ 20, 22, 24). Gallagher asks the Court to dismiss both claims in accordance with Fla. Stat. § 768.72. (Doc. 20 at 18–19).

Section 768.72 contains two subsections relevant here. Subsection (1) bars plaintiffs from pleading punitive damages unless they provide a reasonable evidentiary basis for the claim. *Globe Newspaper Co. v. King*, 658 So. 2d 518, 520 (Fla. 1995). Under that subsection, plaintiffs cannot plead punitive damages until they obtain leave from court to amend the complaint. *Simeon, Inc. v. Cox*, 671 So. 2d 158, 160 (Fla. 1996). Subsection (2) sets forth the standard of liability for punitive damages: plaintiffs must show intentional misconduct or gross negligence by clear and convincing evidence. Fla. Stat. § 768.72(2)(a)–(b).

Gallagher contends that dismissal is warranted under subsection (1) because the Board pleaded punitive damages without obtaining leave of court. (Doc. 20 at 18). But the Eleventh Circuit—applying *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78

---

[11] Gallagher does not even cite the proper statute. Instead, it cites Fla. Stat. § 626.572, which permits rebating if certain conditions are met. While that section explains when a rebate is lawful, it says nothing about whether a particular transaction is a "rebate" in the first place. *See* Fla. H.R. Comm. on Ins., CS for HB 3621 (1990) Staff Analysis 1–2, 17 (May 18, 1990); *N. Am. Co. for Life v. Fuhrmeister*, No. 14-cv-02823, 2016 WL 1021004, at *3 (E.D. Pa. Mar. 15, 2016) (applying Florida law) (stating that Florida law prohibits rebating—defined by § 626.954(1)(h)(1)(b)— unless the conditions are met under § 626.572(1)(a)–(f)).

(1938)—has held that § 768.72(1) does not apply in federal court because it conflicts with the Federal Rule of Civil Procedure 8(a)(3).[12] *Cohen v. Off. Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999), *opinion vacated in part on reh'g*, 204 F.3d 1069 (11th Cir. 2000); *Vacation Break U.S.A., Inc. v. Mktg. Response Grp. & Laser Co.*, 189 F.R.D. 474, 479 (M.D. Fla. 1999) (stating that under *Cohen*, § 768.72(1) does not apply in federal court). Accordingly, § 768.72(1) does not warrant dismissal of the School Board's claim for punitive damages.

Nor does § 768.72(2). That section—which applies in federal court[13]—requires the plaintiff to plead facts creating a "reasonable basis" to believe that the defendant committed intentional misconduct or acted with gross negligence. *In re Engle Cases*, No. 3:09-cv-10000-WGY-JBT, 2012 WL 4771237, at *2 (M.D. Fla. Oct. 5, 2012) (quoting *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001)). A defendant commits intentional misconduct when it takes action knowing that the conduct is wrong and highly likely to cause injury or damage to the plaintiff. § 768.72(2)(a). A defendant is grossly negligent when its conduct is so reckless or wanting in care that it constitutes a conscious disregard or indifference

---

[12] Rule 8(a)(3) requires any pleading that sets forth a claim to include a "concise statement identifying the remedies and the parties against whom relief is sought." Fed. R. Civ. P. 8(a)(3).

[13] *See In re Johnson*, 453 B.R. 433, 439 (Bankr. M.D. Fla. 2011) ("Accordingly, section 768.72's requirement that a plaintiff demonstrate a reasonable basis for entitlement to punitive damages applies in this case."); *Smith v. Ceres Marine Terminals, Inc.*, No. 6:20-cv-1666-WWB-GJK, 2021 WL 3111614, at *3 (M.D. Fla. Mar. 31, 2021); *Gerlach v. Cincinnati Ins.*, No. 2:12-cv-322-JES-DF, 2012 WL 5507463, at *2 (M.D. Fla. Nov. 14, 2012).

to the life, safety, or rights of others. § 768.72(2)(b)

In this case, the School Board's factual allegations provide a reasonable basis to believe that Gallagher committed intentional misconduct. According to the Board, Gallagher knowingly made false representations about the nature of its compensation and its interests and concealed its total fees with the intent of inducing the School Board into entering and renewing the Services Contracts. (Doc. 13 ¶¶ 62– 63, 69–71). These allegations of fraud are sufficient to state a claim for punitive damages. *XP Glob., Inc. v. AVM, L.P.*, No. 9:16-cv-80905-BB, 2016 WL 6679427 (S.D. Fla. Nov. 14, 2016) (stating that "punitive damages are awardable for sufficient fraudulent inducement claims even when those claims involve facts related to a collateral breach of contract claim"); *Belaire at Boca, LLC v. Ass'ns Ins. Agency*, No. 9:06-cv-80887-KLR, 2007 WL 2228631, at *6 (S.D. Fla. July 31, 2007) (finding allegation that defendant made false representations with actual knowledge sufficient to plead punitive damages).

## VI.    Abstention

As an alternative to dismissal, Gallagher asks the Court to stay the case. (Doc. 20 at 12). Gallagher's argument is based on an ongoing state-court lawsuit between the School Board and Cigna Health and Life Insurance Company ("the State Action"). *See Cigna Health & Life Ins. v. Sch. Dist. of Osceola Cnty.*, No. 2020-CA-1982-OC (9th Cir. Ct. Osceola County Fla.). Cigna is an insurance carrier that Gallagher recommended to the School Board. (Doc. 1-1 ¶¶ 17–18). In its initial

Complaint in this case, the School Board alleged that Cigna failed to discharge its contractual duties to the Board when it approved medical procedures without negotiating competitive prices, causing the Board to grossly overpay for prescriptions and medical procedures. (*Id.* ¶ 18). The School Board attributed these expenses to Gallagher's wrongful conduct and sought them as damages in the initial Complaint. (*Id.* ¶¶ 30, 35, 49, 60). Based on these allegations, Gallagher moved to stay the case pending resolution of the State Action. (Doc. 5 at 15). The School Board countered by amending its Complaint and omitting all references to Cigna. (Doc. 13). Relying upon the allegations from the initial Complaint, Gallagher argues that a stay is still warranted. (Doc. 20 at 12).

## A. *Colorado River* Abstention

Federal courts have an unflagging obligation to exercise the jurisdiction given them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). One extraordinarily narrow exception to that duty—*Colorado River* abstention—allows courts to relinquish jurisdiction when: (1) a parallel lawsuit is proceeding in state court, and (2) considerations of sound-judicial administration demand abstention. *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013). At both steps, the court's inquiry tilts heavily in favor of jurisdiction. *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1327 (11th Cir. 2004). This heavy presumption is only overcome when "the clearest of justifications" are present. *Colorado River*, 424 U.S. at 819.

## B. This Action is not Parallel with the State Action

Concurrent proceedings are parallel when they involve: (1) substantially the same parties, and (2) substantially the same issues. *Ambrosia Coal*, 368 F.3d at 1330. While there is no clear test for deciding whether "substantial similarity" exists, *Colorado River* abstention "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)). Thus, while the state and federal actions need not share identical parties or issues, the state-court litigation should completely and promptly resolve all issues between the parties. *Flowers v. Fulton Cnty. Sch. Sys.*, 654 F. App'x 396, 399 (11th Cir. 2016) (stating that it would have been "a serious abuse of discretion" for the court to abstain under *Colorado River* absent a showing that the state action would have completely and promptly resolved all issues between the parties (citation and internal quotation marks omitted omitted)).

*Colorado River* does not apply to this case because the issues are not substantially similar to the issues in the State Action. Although the School Board alleges a breach of contract claim in both actions, its claims are wholly distinct. First, they arise from different contracts between different parties—the State Action is based on a contract for health administration services between the School Board and Cigna, while the federal claim is based on the Services Contracts between the Board

and Gallagher. Second, the conduct giving rise to the claims is distinct—the State Action is based on Cigna's failure to negotiate competitive prices, while the federal action is based on Gallagher's acceptance of excessive commissions and its failure to remain impartial. *See CJS Sols. Grp., LLC v. Tokarz*, No. 3:20-cv-65-MMH-JRK, 2021 WL 5843107, at *4 (M.D. Fla. Dec. 9, 2021) (refusing to abstain because the state action and federal action—though stemming from the same contract—involved different claims that would require the federal court to resolve substantive parts of the case). These same underlying issues render the School Board's claim for breach of fiduciary duty in the State Action wholly distinct from its claim in this case.[14] And even if the claims arose from the same contract or fiduciary relationship, this action—unlike the State Action—features fraud claims based on Gallagher's misrepresentations, which occurred before the parties entered the contracts. *NCH Healthcare Sys., Inc. v. PaxeraHealth Corp.*, No. 2:19-cv-632-SPC-MRM, 2019 WL 6877180, at *2 (M.D. Fla. Dec. 17, 2019) (refusing to abstain because the state action was limited to questions regarding breach of contract, while the federal action concerned false and deceptive acts leading up to the agreement). Accordingly, the

---

[14] The fiduciary duty claim in this case arises from the School Board's relationship with Gallagher, its insurance broker. (Doc. 13 ¶¶ 51–59). By contrast, the fiduciary duties in the State Action arise from the contract between the Board and Cigna. *Answer, Affirmative Defenses, and Counterclaims of the School District of Osceola County*, No. 2020-CA-1982-OC (9th Cir. Ct. Osceola Cnty. Fla. Sept. 16, 2020). Similarly, the conduct giving rise to the claim in this case—Gallagher's failure to act in the Board's best interests and its misrepresentations—is distinct from the conduct giving rise to the claim in the State Action—Cigna's withholding of data and preventing the Board from securing reinsurance proposals.

State Action will resolve few, if any, of the issues in this case. Abstention is not warranted.

### C. Even if the Actions were Parallel, Abstention is not Warranted

In cases where a state and federal action are parallel, the court must weigh six factors to determine whether abstention is appropriate: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights. *Ambrosia Coal*, 368 F.3d at 1331. Gallagher concedes that factors one and two weigh against abstention. And because Gallagher fails to mention or discuss factors five and six, the Court presumes that they too weigh against abstention.

That leaves factors three and four. Gallagher's principal argument is that abstention would prevent piecemeal litigation because the State Action deals with issues relevant to this case. (Doc. 5 at 16). However, the potential for ordinary piecemeal litigation does not justify abstention. *Ambrosia Coal*, 368 F.3d at 1331. Rather, abstention is warranted only if there is an abnormal probability of excessive or deleterious piecemeal litigation that poses a great risk of waste or damage. *Id*. at 1333 (stating that piecemeal litigation must go beyond "some unremarkable repetition of efforts and possibly some piece-by-piece decision-making"). Here, Gallagher has identified no risk of excessive or deleterious piecemeal litigation. For

this reason, among a host of others, abstention is not warranted.

**VII.   The Court will not Strike the Words "Greed" or "Abuse" from the Amended Complaint**

In the Amended Complaint's first paragraph, the School Board alleges that Gallagher breached the Services Contracts "for the basest of reasons—greed." (Doc. 13 ¶ 1). Later in that Complaint, the Board alleges that Gallagher—by breaching its fiduciary duty—allowed the School District "to be abused, while earning millions of dollars." (*Id.* ¶ 57). Gallagher asks the Court to strike the allegations of greed and abuse as immaterial and impertinent. (Doc. 20 at 20).

Rule 12(f) allows the Court to strike immaterial or impertinent matters from a pleading. Fed. R. Civ. P. 12(f). Due to their drastic nature, however, motions to strike are disfavored. *See Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). An "immaterial matter" is one with no important relationship to the claim or defense, and an "impertinent" matter is one that does not pertain to the relevant issues. *S.D. v. St. Johns Cnty. Sch. Dist.*, No. 3:09-cv-250-HES-TEM, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009). Generally, the court will not strike allegations as immaterial or impertinent unless they have no possible bearing on the relevant issues. *U.S. Dental Inst. v. Am. Ass'n of Orthodontists*, 396 F. Supp. 565, 583 (N.D. Ill. 1975).

Gallagher has failed to show that the School Board's allegations have no possible bearing on the relevant issues. Greed, as the School Board points out, is a

factor relevant to punitive damages. *See Sufrin v. Hosier*, 128 F.3d 594, 599 (7th Cir. 1997) ("And though absence of financial hardship to [plaintiff] may have weighed against the award of punitive damages, [defendant's] greed weighed in favor of it."). Similarly, the Board's allegation that Gallagher allowed it to be financially abused is relevant to its claim that Gallagher failed to act in its best interests, causing damages. Neither allegation will be struck.

Based on the foregoing, it is ordered as follows:

1.      Gallagher's Motion to Dismiss and Motion to Strike the Amended Complaint (Doc. 20) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 21, 2022.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties