IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SCHOOL BOARD OF OSCEOLA
COUNTY, FLORIDA,

      Plaintiff,

vs.

GALLAGHER BENEFIT
SERVICES, INC.,

      Defendant.

CASE NO.: 6:21-CV-01979

**JURY TRIAL DEMANDED**

## GALLAGHER BENEFIT SERVICES INC.'S ANSWER & DEFENSES TO SCHOOL BOARD'S AMENDED COMPLAINT

Defendant, Gallagher Benefit Services, Inc. ("GBS"), hereby files its Answer to the Plaintiff, School Board of Osceola County, Florida's (the "School Board") Amended Complaint (Doc. 13), and states as follows:

1.    GBS specifically denies that it breached any commitments or agreements with the School Board. GBS lacks information enough to form a belief about the truth of the allegations in paragraph 1 related to the number of schools, students, or rankings of the School Board. Accordingly, these allegations are denied. GBS denies the remaining allegations in paragraph 1 of the Amended Complaint.

2.    GBS admits only that the quoted language can be found on its website. GBS denies receipt of any "secret insurance commissions" and denies

breaching any agreements with the School Board.  GBS denies breaching the trust of the School Board.  GBS denies the remaining allegations in paragraph 2 of the Amended Complaint.

3.     GBS admits only that the School Board, is a public municipal agency created under Article IX, Section 4 of the Florida Constitution with jurisdictional bounds in Osceola County, Florida.  GBS denies the remaining allegations in paragraph 3 of the Amended Complaint.

4.     GBS admits only that it is a foreign corporation with its principal place of business in Cook County, Illinois and that it conducts certain authorized business in Florida.  GBS denies the remaining allegations in paragraph 4 of the Amended Complaint.

5.     GBS admits only that this Court has authority under 28 U.S.C. 1332(a). GBS denies the remaining allegations in paragraph 5 of the Amended Complaint.

6.     GBS admits only that venue is appropriate under 28 U.S.C. 1391(b). GBS denies the remaining allegations in paragraph 6 of the Amended Complaint.

7.     GBS admits that on or about November 17, 2011, the School Board issued request for proposal No. SDOC-12-P-045-NM (hereinafter the "2011 RFP"). GBS further admits that Exhibit 1 to the Amended Complaint purports

to be a copy of the 2011 RFP.  GBS denies the remaining allegations in paragraph 7 of the Amended Complaint.

8.    GBS admits that on or about December 12, 2011, GBS submitted a response to the 2011 RFP.  GBS further admits that Exhibit 2 purports to be a copy of GBS's Response to the 2011 RFP.  GBS denies the remaining allegations in paragraph 8 of the Amended Complaint.

9.    GBS admits only that the quoted language set forth in subparagraphs 9(a) to 9(e) is contained within Exhibit 2 to the Amended Complaint.  GBS denies the remaining allegations in paragraph 9 of the Amended Complaint.

10.    GBS admits only that the quoted language set forth in subparagraphs 10(a) to 10(b) is contained within Exhibit 2 to the Amended Complaint.  GBS denies the remaining allegations in paragraph 10 of the Amended Complaint.

11.    GBS admits that Addendum #1 to the 2011 RFP was signed by a representative of GBS on or about December 12, 2011.  GBS further admits that the quoted language in paragraph 11 is contained within Exhibit 2 of the Amended Complaint.  GBS denies the remaining allegations in paragraph 11 of the Amended Complaint.

12.    GBS admits that a representative of GBS signed the 2011 RFP. GBS admits that the quoted language in paragraph 12 is contained within

Exhibit 2 of the Amended Complaint.  GBS denies the remaining allegations in paragraph 12 of the Amended Complaint.

13.    GBS admits a representative of GBS signed the 2011 RFP.  GBS further admits that the quoted language in paragraph 13 is contained in Exhibit 2 of the Amended Complaint.  GBS denies the remaining allegations in paragraph 13 of the Amended Complaint.

14.    GBS admits only that it was selected by the School Board and entered into a Services Agreement on or about February 21, 2012 a copy of which is attached as Exhibit 3.  GBS denies the remaining allegations in paragraph 14 of the Amended Complaint.

15.    GBS admits that Exhibit 3 contains, *inter alia*, an Attachment "B" a portion of which is quoted in paragraph 15.  GBS denies the remaining allegations in paragraph 15 of the Amended Complaint.

16.    GBS admits that on or about December 13, 2012, the School Board approved and accepted GBS's Client Coverage Acknowledgement and Compensation Disclosure Statement ("December 2012 Disclosure Agreement").  GBS further admits that a copy of the approved and accepted December 2012 Disclosure Agreement is attached to the Amended Complaint as Exhibit 4 and that the December 2012 Disclosure Agreement contained, *inter alia,* information regarding commission percentages.  GBS denies the remaining allegations in paragraph 16 of the Amended Complaint.

4

17.    GBS admits that on or about December 20, 2013, the School Board approved and accepted GBS's Client Coverage Acknowledgement and Compensation Disclosure Statement ("December 2013 Disclosure Agreement"). GBS further admits that a copy of the approved and accepted December 2013 Disclosure Agreement is attached to the Amended Complaint as Exhibit 5 and that the December 2013 Disclosure Agreement contained, *inter alia,* information regarding commission percentages. GBS denies the remaining allegations in paragraph 17 of the Amended Complaint.

18.    GBS admits that on or about January 21, 2014, the School Board entered into the first renewal of the Services Agreement. GBS further admits that a copy of the renewal is attached to the Amended Complaint as Exhibit 6. GBS denies the remaining allegations in paragraph 18 of the Amended Complaint.

19.    GBS admits that on or about November 18, 2014, the School Board entered into a second renewal of the Services Agreement. GBS further admits that a copy of the second renewal is attached to the Amended Complaint as Exhibit 7. GBS denies the remaining allegations in paragraph 19 of the Amended Complaint.

20.    GBS admits that on or about November 24, 2015, the School Board approved and accepted GBS's Client Coverage Acknowledgement and Compensation Disclosure Statement ("November 2015 Disclosure

Agreement"). GBS further admits that a copy of the approved and accepted November 2015 Disclosure Agreement is attached to the Amended Complaint as Exhibit 8 and that the November 2015 Disclosure Agreement contained, *inter alia,* information regarding commission percentages. GBS denies the remaining allegations in paragraph 20 of the Amended Complaint.

21.    GBS admits that on or about February 16, 2016, the School Board entered into a third renewal of the Services Agreement. GBS further admits that a copy of the third renewal is attached to the Amended Complaint as Exhibit 9. GBS denies the remaining allegations in paragraph 21 of the Amended Complaint.

22.    GBS admits that on or about October 17, 2016, the School Board approved and accepted GBS's Client Coverage Acknowledgement and Compensation Disclosure Statement ("October 2016 Disclosure Agreement"). GBS further admits that a copy of the approved and accepted October 2016 Disclosure Agreement is attached to the Amended Complaint as Exhibit 10 and that the October 2016 Disclosure Agreement contained, *inter alia,* information regarding commission percentages. GBS denies the remaining allegations in paragraph 22 of the Amended Complaint.

23.    GBS admits that on or about October 19, 2016, the School Board issued request for proposal No. SDOC-17-P-052-LK (hereinafter the "2016 RFP"). GBS further admits that Exhibit 11 to the Amended Complaint

purports to be a copy of the 2016 RFP. GBS denies the remaining allegations in paragraph 23 of the Amended Complaint.

24.     GBS admits that Exhibit 11 contains, *inter alia*, an Addendum #1, portions of which are quoted in paragraph 24. GBS denies the remaining allegations in paragraph 24 of the Amended Complaint.

25.     GBS admits that on or about November 15, 2016 GBS submitted a response to the 2016 RFP. GBS admits that Exhibit 12 purports to be a copy of GBS's Response to the 2016 RFP. GBS denies the remaining allegations in paragraph 25 of the Amended Complaint.

26.     GBS admits that the quoted language set forth in paragraph 26(a) to 26(h) of the Amended Complaint is contained within Exhibit 12. GBS denies the remaining allegations in paragraph 26 of the Amended Complaint.

27.     GBS admits that on or about November 15, 2016 GBS submitted a response to the 2016 RFP. GBS admits that Exhibit 12 purports to be a copy of GBS's Response to the 2016 RFP. GBS denies the remaining allegations in paragraph 27 of the Amended Complaint.

28.     GBS admits that the 2016 RFP contained an Attachment "C" which is included within Exhibit 12. GBS denies the remaining allegations in paragraph 28 of the Amended Complaint.

29.     GBS admits that a Request for Proposal form was signed by Eric Scott on behalf of GBS on or about November 14, 2016 and that the form is

included within Exhibit 12.   GBS denies the remaining allegations in paragraph 29 of the Amended Complaint.

30.   GBS admits that it and the School Board entered into a Services Agreement on or about February 7, 2017, a copy of which is attached as Exhibit 13.  GBS denies the remaining allegations in paragraph 30 of the Amended Complaint.

31.   GBS admits that the quoted language contained in paragraph 31 of the Amended Complaint is included in Exhibit 13.   GBS denies the remaining allegations in paragraph 31 of the Amended Complaint.

32.   GBS admits that on or about January 31, 2018, the School Board approved and accepted GBS's Client Coverage Acknowledgement and Compensation Disclosure Statement ("December 2017 Disclosure Agreement").   GBS further admits that a copy of the approved and accepted December 2017 Disclosure Agreement is attached to the Amended Complaint as Exhibit 14 and that the December 2017 Disclosure Agreement contained, *inter alia,* information regarding commission percentages.   GBS denies the remaining allegations in paragraph 32 of the Amended Complaint.

33.   GBS admits that on or about November 15, 2018, the School Board approved and accepted GBS's Client Coverage Acknowledgement and Compensation Disclosure Statement ("November 2018 Disclosure Agreement").  GBS further admits that a copy of the approved and accepted

November 2018 Disclosure Agreement is attached to the Amended Complaint as Exhibit 15 and that the November 2018 Disclosure Agreement contained, *inter alia,* information regarding commission percentages. GBS denies the remaining allegations in paragraph 33 of the Amended Complaint.

34. GBS admits that on or about February 19, 2019, the School Board entered into a renewal of the Services Agreement. GBS further admits that a copy of the renewal is attached to the Amended Complaint as Exhibit 16. GBS denies the remaining allegations in paragraph 34 of the Amended Complaint.

35. GBS admits that it assisted the School Board in procuring competitive proposals from qualified insurance carriers and third-party administrators for services related to the School Board's self-funded health program consistent with the Services Agreements. GBS denies the remaining allegations in paragraph 35 of the Amended Complaint.

36. GBS denies the allegations in paragraph 36 of the Amended Complaint.

37. GBS denies the allegations in paragraph 37 of the Amended Complaint.

38. GBS denies the allegations in paragraph 38 of the Amended Complaint.

## COUNT I

39.    GBS realleges and incorporates by reference as if fully set forth herein its responses to paragraphs 1 to 38 above.

40.    GBS denies the allegations in paragraph 40 of the Amended Complaint.

41.    GBS admits only that it entered into various contracts with the School Board between 2012 and 2016.  GBS denies the remaining allegations in paragraph 41 of the Amended Complaint.

42.    GBS denies the allegations in paragraph 42 of the Amended Complaint.

43.    GBS denies the allegations in paragraph 43 of the Amended Complaint.

## COUNT II

44.    GBS realleges and incorporates by reference as if fully set forth herein its responses to paragraphs 1 to 38 above.

45.    GBS denies the allegations in paragraph 45 of the Amended Complaint.

46.    GBS admits only that it and the School Board entered into a Services Agreement on or about February 7, 2017 and that the term of such Services Agreement ended on or about May 31, 2019.  GBS denies the remaining allegations in paragraph 46 of the Amended Complaint.

47.     GBS denies the allegations in paragraph 47 of the Amended Complaint.

48.     GBS denies the allegations in paragraph 48 of the Amended Complaint.

49.     GBS denies the allegations in paragraph 49 of the Amended Complaint.

## COUNT III

50.     GBS realleges and incorporates by reference as if fully set forth herein its responses to paragraphs 1 to 38 above.

51.     GBS denies the allegations in paragraph 51 of the Amended Complaint.

52.     GBS denies the allegations in paragraph 52 of the Amended Complaint.

53.     GBS denies the allegations in paragraph 53 of the Amended Complaint.

54.     GBS denies the allegations in paragraph 54 of the Amended Complaint.

55.     GBS denies the allegations in paragraph 55 of the Amended Complaint.

56.     GBS denies the allegations in paragraph 56 of the Amended Complaint.

57.     GBS denies the allegations in paragraph 57 of the Amended Complaint.

58.     GBS denies the allegations in paragraph 58 of the Amended Complaint.

59.     GBS denies the allegations in paragraph 59 of the Amended Complaint.

## COUNT IV

60.     GBS realleges and incorporates by reference as if fully set forth herein its responses to paragraphs 1 to 38 above.

61.     GBS denies the allegations in paragraph 61 of the Amended Complaint.

62.     GBS denies the allegations in paragraph 62 of the Amended Complaint.

63.     GBS denies the allegations in paragraph 63 of the Amended Complaint.

64.     GBS denies the allegations in paragraph 64 of the Amended Complaint.

65.     GBS denies the allegations in paragraph 65 of the Amended Complaint.

66.     GBS denies the allegations in paragraph 66 of the Amended Complaint.

## COUNT V

67.     GBS realleges and incorporates by reference as if fully set forth herein its responses to paragraphs 1 to 38 above.

68.     GBS denies the allegations in paragraph 68 of the Amended Complaint.

69.     GBS denies the allegations in paragraph 69 of the Amended Complaint.

70.     GBS denies the allegations in paragraph 70 of the Amended Complaint.

71.     GBS denies the allegations in paragraph 71 of the Amended Complaint.

72.     GBS denies the allegations in paragraph 72 of the Amended Complaint.

73.     GBS denies the allegations in paragraph 73 of the Amended Complaint.

74.     GBS denies the allegations in paragraph 74 of the Amended Complaint.

75.     All allegations not specifically admitted above are hereby denied.

76.     GBS demands a jury trial on all issues so triable.

## AFFIRMATIVE & OTHER DEFENSES

### First Defense
### Statute of Limitations

77.    The School Board's claims are barred, in whole or in part, by the applicable statute of limitations.  *See* section 95.11, Fla. Stat.

78.    The School Board filed the instant action on or about October 27, 2021.

79.    Count I of the Amended Complaint attempts to state a claim for breach of the 2012 Services Agreement, as renewed.  Count II of attempts to state a claim for breach of the 2016 Services Agreement, as renewed.

80.    Section 95.11(2)(b) of the Florida Statutes requires that claims for breach of a written contract must be commenced within five years of accrual.

81.    The School Board's claims for breach of contract (in whole or in part) accrued more than five years prior to the initiation of this lawsuit and are therefore barred by the statute of limitations.

82.    The School Board cannot recover on any claim for breach of contract that accrued more than five years prior to the filing of the instant suit.

83.    Moreover, Count III of the Amended Complaint attempts to state a claim for breach of fiduciary duty.  Count IV and V attempt to state claims founded on allegations of fraud.  Section 95.11(3) required that such claims be commenced within four years of their accrual.

84.     The School Board's claims for breach of fiduciary duty and fraud accrued more than four years prior to the initiation of this lawsuit and are therefore barred by the statute of limitations.

85.     The School Board cannot recover on any claim for breach of fiduciary duty or fraud that accrued more than four years prior to the filing of the instant suit.

## Second Defense
## Latches

86.     The School Board's claims are barred by the doctrine of laches.

87.     The School Board knew or should have known of any commissions received by GBS no later than December 13, 2012 when Ken DeBord, the School District's Director of Risk Management, signed the first of six Disclosure Agreements on behalf of the School Board.

88.     The December 13, 2012 Disclosure Statement (and all subsequent Disclosure Agreements) provided a list of the fees and/or commissions to be paid to GBS as a result of its Broker of Record relationship to the School Board's Group Health Plan(s) and any relationships, or agreements GBS has with any insurance companies selected by the School Board.

89.     Mr. DeBord received, reviewed, approved, and accepted in writing on behalf of the School Board the December 13, 2012 Disclosure Statement yet the School Board failed to take any action with respect to the disclosures

therein for nearly nine years.   Thereafter, Mr. DeBord, and others on behalf of the School Board, received, reviewed, approved, and accepted in writing subsequent Disclosure Agreements but failed to raise any questions or concerns in a timely manner.

90.    The School Board's failure to exercise diligence and act promptly has prejudiced GBS.  Therefore, the School Board's claims must be barred, in whole or in part, by the doctrine of latches.

### Third Defense
### Estoppel

91.    The School Board's claims against GBS are barred by the doctrine of estoppel.

92.    At all material times, the School Board was aware of and accepted and approved the commissions received by GBS.

93.    Specifically, but without limitation, a) the School Board received written notice regarding GBS's commissions beginning in 2012 and continuing on a regular schedule throughout the parties' relationship; and b) the School Board repeatedly received, reviewed, approved, and accepted in writing, the receipt of such commissions by GBS including, *inter alia*, executing a series of Disclosure Agreements signed by the School Board.  *See e.g.,* Exhibits 4, 5, 8, 10, 14, 15 to the Amended Complaint; and c) the School Board further

represented to GBS that GBS's receipt of commissions were acceptable and approved by the School Board.

94.     Moreover, the School Board benefited from the out of scope services provided by GBS to the School Board and its employees.

95.     GBS was entitled to rely and did rely upon the School Board's acknowledgement and expressed acceptance and approval of the commissions received by GBS.

96.     GBS was entitled to rely and did rely upon the School Board's acceptance of the additional out of scope services provided by GBS and the School Board's agreement to compensate GBS for these out of scope services through commissions.

97.     GBS changed its position based upon the representations and conduct of the School Board such that it would be to GBS's detriment of the School Board were now allowed to change its position with regard to these representations and its conduct.

### Fourth Defense
### Waiver

98.     The School Board's claims are barred by the doctrine of waiver.

99.     The School Board knowingly and intentionally relinquished a known right to seek or otherwise assert claims against GBS regarding the alleged cap of commissions under the Service Agreements.

100.   Specifically, but without limitation, a) the School Board received written notice regarding GBS's commissions beginning in 2012 and continuing on a regular schedule throughout the parties' relationship; and b) the School Board repeatedly received, reviewed, approved, and accepted in writing, the receipt of such commissions by GBS including, *inter alia*, executing a series of Disclosure Agreements signed by the School Board. *See e.g.,* Exhibits 4, 5, 8, 10, 14, 15 to the Amended Complaint; and c) the School Board further represented to GBS that GBS's receipt of commissions were acceptable and approved by the School Board.

101.   Indeed, at all material times, the School Board was aware of and accepted and approved the commissions received by GBS.

102.   Despite this awareness, the School Board did not attempt to assert any claims against GBS or otherwise put GBS on notice of its current allegation that GBS's receipt of commissions somehow violated the parties' Service Agreements.

103.   Instead, the School Board signed the Disclosure Agreements, modifying the Service Agreements and affirmatively acknowledging to GBS the School Board's acceptance and approval of said commissions.

104.   Additionally, the School Board accepted and benefited from the additional out of scope services provided by GBS to the School Board and its employees.

105. By signing the Disclosure Agreements, which modified the Services Agreements, the School Board waived any contractual provisions that would limit GBS's scope of work and compensation. Moreover, by accepting the benefit of the additional out of scope services, the School Board received legal consideration for its modification.

106. As such, the School Board waived any right to assert the instant claims against GBS.

### Fifth Defense
### Vague/Uncertain Terms

107. The School Board's claims for breach of contract (Counts I and II) are barred because there was no meeting of the minds between the parties regarding the material terms of the Service Agreements upon which the claims are based.

108. Moreover, the breach of contract claims are barred because the material terms of the Service Agreements are too vague, incomplete, and uncertain to give rise to an enforceable cause of action for breach.

### Sixth Defense
### Comparative Negligence

109. The School Board's claim for negligent breach of fiduciary duty against GBS is barred by the doctrine of comparative negligence because the School Board itself is guilty of negligence and/or carelessness, which was the sole legal cause of, or contributed to cause, the alleged damage, if any.

110.   Specifically, and without limitation, the School Board received copious written disclosures regarding the commissions received by GBS and provided numerous written and other acknowledgements of said commissions.

111.   Accordingly, the School Board knew, or should have known, what commissions GBS received as early as 2012 and throughout the relationship.

112.   The School Board's recovery, if any, must be prevented or reduced in accordance with its fault.

### Seventh Defense
### Negligent Misrepresentation

113.   The School Board's claims for breach of contract are barred because of the School Board's misrepresentations to GBS.

114.   Specifically, but without limitation, a) the School Board received written notice regarding GBS's commissions beginning in 2012 and continuing on a regular schedule throughout the parties' relationship; and b) the School Board repeatedly received, reviewed, approved, and accepted in writing, the receipt of such commissions by GBS including, *inter alia*, executing a series of Disclosure Agreements signed by the School Board.  *See e.g.,* Exhibits 4, 5, 8, 10, 14, 15 to the Amended Complaint; and c) the School Board further represented to GBS that GBS's receipt of commissions were acceptable and approved by the School Board.

115. The School Board repeatedly represented to GBS that the commission agreement was acceptable.

116. The School Board accepted the value of the services provided by GBS to the School Board and its employees and represented that such services were out of scope and worthy of additional compensation.

117. These actions by the School Board constituted a representation to GBS that the commissions received by GBS were accepted and approved by the School Board.

118. The School Board knew or should have known that its representations were false but made the representations anyway to persuade GBS to agree to the parties' contracts.

119. GBS relied to its detriment on the School Board's representations.

**Eighth Defense**
**Intervening/Supervening Cause**

120. GBS was not the proximate or legal cause of any damages claimed by the School Board in the Amended Complaint.

121. To the extent that the School Board suffered any actual damages, which GBS denies, such damages were not caused by GBS but were the result of the decisions, acceptance of benefits, and agreements of the School Board.

122. Such actions by the School Board constitute the intervening or supervening cause of any damages.

## Ninth Defense
## Unclean Hands

123.   The School Board cannot recover from GBS because it comes to this Court with unclean hands.

124. Specifically, and without limitation, the School Board affirmatively represented to GBS that GBS was authorized to receive contingent, additional, and supplemental commissions.

125.   The School Board accepted the benefits provided by GBS for out of scope services provided to the School Board and its employees.

126.   The School Board knows it authorized GBS's actions and conduct but nevertheless seeks to bring unwarranted claims against GBS.

127.   Furthermore, the School Board knows that its claims are barred, in whole or in part, by the statute of limitations but still proceeds, in bad faith, to assert the instant claims.

## Tenth Defense
## Mistake

128.   The School Boards claims against GBS are barred based upon the doctrine of mistake.

129.   Specifically, and without limitation, GBS did not believe that the Service Agreements, as renewed, precluded GBS from earning contingent, additional, and supplemental commission on activities outside the scope of the Service Agreements.

130.   The School Board had reason to know of GBS's mistake and, encouraged the mistake but making representations in the Disclosure Agreements and otherwise to GBS that such conduct was condoned by the School Board.

131.   As a result of this mistake it would be unconscionable to enforce the agreements in the manner sought now by the School Board.

### Eleventh Defense
### No Damage

132.   The School Board did not incur any damages as a result of GBS's purported breaches, representations, or actions.

133.   The School Board did not pay the allegedly "secret" commissions to GBS.

134.   The School Board had and has no ownership interest or other right to the alleged "secret" commissions.

135.   Any commissions paid to GBS were paid by a third-party and did not cause the School Board to incur a loss.

136.   Instead, the School Board benefited from the out of scope services provided by GBS to the School Board and its employees.

### Twelfth Defense
### Independent Tort Doctrine

137.   Florida's independent tort doctrine precludes the School Board's claims for breach of fiduciary duty because the School Board cannot rely on

breaches of duties explicitly stated in the Services Agreements and amendments as the basis in tort for breaching fiduciary duties.

## Thirteenth Defense
## No Standing

138.   The School Board lacks the standing required to bring the instant claims.

139.   Specifically, and without limitation, the School Board did not pay the commissions that GBS received.  Moreover, the School Board was not a party to the contract between GBS and the non-party that resulted in the commissions generated.

140.   The School Board has no legal right and lacks the standing required to seek disgorgement of commissions earned by GBS for services provided to non-parties in connection with separate policies that were outside the scope of those explicitly required by the Services Agreements and amendments, including but not limited to life and disability insurance.

## Fourteenth Defense
## Rebating Prohibited

141.   Florida law precludes the rebating of commissions paid to insurance agents back to clients.

142.   While the School Board did not pay the commissions at issue, the School Board seeks to disgorge such commissions from GBS to place in a trust for the benefit of those persons who paid the commissions.

143.  Such action would constitute an improper rebate of premium under Florida law.

### Fifteenth Defense
### Acts of CIGNA

144.  To the extent that the School Board sustained any damages related to the insurance coverage procured by GBS, which GBS denies, such damages were proximately caused by subsequent and intervening or superseding acts of the CIGNA (whose relationship with the School Board pre-dated GBS), or other third-parties, such that GBS is not responsible for any such damages.

### Sixteenth Defense
### *Blumberg* Judicial Estoppel

145.  To the extent that the School Board seeks to recover from GBS for alleged deficiencies in the coverage provided, the claims should be estopped pursuant to *Blumberg v. USAA Casualty Ins. Co.*, 790 So. 2d 1061, 1065-66 (Fla. 2001) due to the School Board's inconsistent positions asserted by the School Board in the case of *Cigna v. School District of Osceola County*, Case No. 2020-CA-1982-OC, pending in the Circuit Court of the Ninth Judicial Circuit, in and for Osceola County, Florida.

146.  Moreover, to the extent that any of the School Board's alleged damages are actually covered under a policy of insurance, GBS cannot be held liable therefore.

## Seventeenth Defense
## Public Knowledge

147.   The School Board cannot allege fraud regarding the purported "secret" commissions where information regarding contingent and supplemental commissions was not only known to the School Board from the Disclosure Agreements and other direct disclosures but was also public knowledge in the insurance industry, and within public SEC filings.

## Eighteenth Defense
## Contract Limitation on Damages

148.   Pursuant to the terms of the parties' agreements, GBS cannot be liable to the School Board for any "indirect, consequential or punitive damages."

## Nineteenth Defense
## Quantum Meruit Set-Off

149.   The School Board received and fully accepted the benefit of out of scope services provided by GBS to the School Board and its employees.

150.   To the extent that the School Board sustained any damages, which GBS denies, GBS is entitled to a set-off for the value of the out of scope services provided by GBS to the School Board and its employees.

**Twentieth Defense**
**Failure to Mitigate**

151.   To the extent that the School Board sustained any damages, which GBS denies, such damages should be reduced due to the School Board's failure to mitigate.

152.   Specifically, and without limitation, the School Board learned of and, in fact, authorized GBS's receipt of commissions as early as 2012 but failed to raise any questions or concerns for nearly a decade and therefore, compounded rather than mitigated any damage.

**Twenty-First Defense**
**Unjust Enrichment**

153.   The School Board's claims are barred in whole or in part by the doctrine of unjust enrichment.

154.   The School Board requested and accepted the benefit of the out of scope services provided by GBS to the School Board and its employees for years.

155.   Permitting the School Board to retain the value of these out of scope services and at the same time disgorge the commissions received by GBS for such services would result in an unjust enrichment to the School Board.

156.   It would be inequitable for the School Board to retain such benefit for which no payment has been made by the School Board.

**Twenty-Second Defense**
**Ratification**

157.   The School Board's claims for breach of contract are barred by the doctrine of ratification.

158.   Specifically, but without limitation, a) the School Board received written notice regarding GBS's commissions beginning in 2012 and continuing on a regular schedule throughout the parties' relationship; and b) the School Board repeatedly received, reviewed, approved, and accepted in writing, the receipt of such commissions by GBS including, *inter alia*, executing a series of Disclosure Agreements signed by the School Board.  *See e.g.,* Exhibits 4, 5, 8, 10, 14, 15 to the Amended Complaint; and c) the School Board further represented to GBS that GBS's receipt of commissions were acceptable and approved by the School Board.

159.   At the same time, it made these representations and agreements, the School Board received a benefit from GBS's provision of out of scope services to both the School Board and its employees.

160.   Despite knowledge of the original language in the Services Agreement, the disclosed commission structure, and the out of scope services provided by GBS, the School Board accepted and expressed its intention to accept the transaction and during the contracts accepted the benefits of the

contracts with GBS without complaint or objection and thereby ratified the conduct which the School Board now seeks to characterize as a breach.

**Twenty-Third Defense**
**Election of Remedies Required**

161.   The School Board cannot recover for damages for breach of contract and fraud in the inducement arising from the same contract and alleged conduct.  Instead, the School Board must make an election of remedies.

**Twenty-Fourth Defense**
**No Entitlement to Equitable Relief**

162.   The School Board has an adequate remedy at law and is therefore not entitled to equitable relief.

**Twenty-Fifth Defense**
**Failure to State a Claim**

163.   The School Board's Amended Complaint fails to state a claim upon which relief can be granted.

WHEREFORE, GBS, having fully and completely responded to each and every allegation and claim in the Amended Complaint, prays that the School Board take nothing, that this action be dismissed in its entirety, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Lawrence P. Ingram      FBN: 855510
Jessica Kirkwood Alley  FBN: 177059
Hoyt L. Prindle III     FBN: 1010830
**FREEBORN & PETERS, LLP**
201 N. Franklin Street, Suite 3550
Tampa, FL 33602
E: lingram@freeborn.com
   jalley@freeborn.com
   hprindle@freeborn.com

*Counsel for Gallagher Benefit Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022, a true and correct copy of the foregoing Answer and Defenses of GBS to the School Board's Amended Complaint was electronically filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Jessica Kirkwood Alley FBN: 177059